This is a controversy between rival and competitive public utilities, engaged in the transportation for hire of passengers between the city of Columbus and the city of Zanesville in this state. No question of rates is involved, and there is no evidence in the case that the public is not being properly transported or that the service is not at all times efficient and conducted in a manner entirely in accord with the orders of the Public Utilities Commission.
Was the commission misled or deceived in the granting of these certificates to these individual respondents, upon affidavit that they were operating individually on April 28, 1923, pursuant to Section 614-87, General Code, when they were in fact a partnership, and hence violating the principle ofWesthoven v. Public Utilities Comm., 112 Ohio St. 411,147 N.E. 759?
There are two paramount grounds of error which are necessary to be considered: First, did the commission err in finding that there was not sufficient proof of a partnership between the respondents on April 28, 1923, or thereafter, to justify the cancellation of the certificates of convenience and necessity theretofore issued to the respondents? *Page 413 
Second, did the commission err in not ordering the production of books, papers, documents, etc., of the respondent?
Of these in their order: First. Was there sufficient proof of partnership?
This is a voluminous record, and the case of the complainant is largely built upon the cross-examination of the respondents. In order to prevail upon this issue of whether there was a partnership or not, we think the evidence must show, by the preponderance thereof, that the same came within the rule ofHarvey v. Childs and Potter, 28 Ohio St. 319, 22 Am. Rep., 387, syllabus 2 thereof reciting:
"Participation in the profits of a business, though cogent evidence of a partnership, is not necessarily decisive of the question. The evidence must show that the persons taking the profits, shared them as principals in a joint business, in which each has an express or implied authority to bind the other."
It is said in the opinion at page 321:
"Participation in the profits of a business, however, cannot be regarded as a rule so universal and unrelenting as to be unjustly applied to a case where a debt is incurred by one who cannot be said to be acting, in the particular transaction, as the agent or on behalf of the party sought to be charged. Therefore, on principle, the true test of a partnership, at last, is left to be that of the relation of the parties as principal and agent, to be proved by any competent evidence; for, when they sustained that relation, a joint liability may *Page 414 
be said to have been incurred by the authority, or on behalf of each of the parties so related. The tendency of the more modern authorities, both English and American, is to this conclusion."
Measured by this rule, we think the evidence in this record fails to show the necessary elements required to be present in order to prove a partnership. True, there was proof of operation under a joint schedule to the mutual benefit, a sharing in the expenses of the public waiting room, the salary and pay of a caller and manager, the purchasing of certain equipment for common funds, a division of receipts, subject to certain deductions, while each owner was to stand certain expenses incident to his own cars. But we find nothing in the record which shows that these respondents sustained the relation of principal and agent to each other, with power to bind each other in the scope of the common business, or that would create a liability of any of the respondents for the torts of any of the other respondents. From an examination of the record, therefore, we fail to find that the commission committed error in sustaining the motion to dismiss the complaint, in so far as the proof of partnership was concerned.
Second. This brings us to a discussion of the second alleged ground of error, which is that the commission erred in refusing to direct the respondents to produce their books of account, papers, records, etc.
The right to production before the commission of books, papers, etc., is provided for by statute (Section 614-7, General Code), which reads: *Page 415 
"The commission shall have power, either through its members or by inspectors or employes duly authorized by it, to examine all books, contracts, records, documents and papers of any public utility, and by subpoena duces tecum to compel the production thereof, or of duly verified copies of the same or any of them, and to compel the attendance of such witnesses as the commission may require to give evidence at such examination."
It will thus be seen that the commission has ample power to protect the public in any matter involving service, rates, or anything in which the public has an interest, by compelling the production of such books, accounts, documents, etc., as the commission sees fit. But in controversies between competing and rival utility agencies, an order to compel production by one utility agency of its purely private books, documents, etc., for the inspection of a competitor, might under certain circumstances be productive of more harm to the service, hence to the public, than otherwise; and, where very broad opportunity for cross-examination of all respondents has been given, as in this instance, and there is no showing of a lack of efficiency of service, or a question of rates, or something in which the rights of the public are involved, the denial by the commission of an application for such an order against one competitor in favor of a rival is not necessarily unreasonable or unlawful.
The ultimate facts going to throw light upon the relation of the parties were thoroughly developed in the testimony. The question of the amounts of *Page 416 
receipts and expenditures, as such, would be a matter of no consequence except in so far as it might throw light upon the paramount question, to wit, was there a partnership? The commission, in the exercise of its discretion, felt that it would not be necessary to subject these private books of account, papers, etc., to the scrutiny of rival and competitive interests in a controversy in which the public were not concerned, in so far as the efficiency of the service rendered upon the public highways of the state was concerned. Under these circumstances, we see no error in the conclusion of the Public Utilities Commission.
Does the entire record show that there was deception practiced upon the Public Utilities Commission by these respondents in securing these certificates, by reason of which the same should be canceled, on the principle of the case ofWesthoven v. Public Utilities Comm., 112 Ohio St. 411,147 N.E. 759? In that case the facts developed that a number of persons in partnership had been operating a motorbus line at the time the Freeman-Collister Act went into effect, April 28, 1923, and that one of the partners, Carl J. Westhoven, by misrepresentation and fraud secured for himself a certificate of convenience and necessity, under an affidavit that he, as the River Road Bus Line, was operating on April 28, 1923, against which action of the commission the other partners filed complaint, upon the hearing of which the commission, finding that such representations were in fact false and untrue, found that the certificate issued thereon had been secured by misrepresentation and fraud, *Page 417 
and the order of the commission was that such certificate should be revoked. This action of the commission was affirmed by this court.
The record in this case makes no showing of such a condition as existed in the Westhoven case. The operation of the Red Star Transportation Line on April 28, 1923, was not unknown to the Public Utilities Commission, as shown by the number of cases before it involving the same, some of which have been before this court for review. Again, the record shows no attempt on its part to comply with the statutes of this state relative to partnerships; and, further, there is affirmative testimony in the record, by a witness called on behalf of the complainant, to wit, the witness Francis Firestone, who sold certain equipment to the respondents, that he knew on April 28, 1923, the respondents were individual operators.
The commission based its holding on the underlying principle of the case of Small v. Public Utilities Comm., 113 Ohio St. 650,150 N.E. 37, wherein it is announced that where "there is no cessation or interruption of service, and the service is at all times efficient, it is error on the part of the Public Utilities Commission to order a revocation of such certificate on the ground of abandonment."
That case recognizes the doctrine that it is the service to the public that is the paramount thing to be considered after a certificate has been issued.
Upon the entire record we fail to find that the Public Utilities Commission was deceived or misled, either in the issuance of these certificates to the respondents, or by their operations under them *Page 418 
thereafter. The service being at all times efficient, and no question of rates being involved, and no fraud intervening, our conclusion is that the order of the Public Utilities Commission appearing herein is neither unlawful nor unreasonable, and it follows that the same should be and hereby is affirmed.
Order affirmed.
MARSHALL, C.J., JONES, MATTHIAS, ALLEN, KINKADE and ROBINSON, JJ., concur.