GARRISON, D. B. A. LIBERTY MILLS SALE & DAILY HOG MARKET, APPELLEE, *v.* PLACE, ADMR., APPELLANT.

240

(No. 1482—Decided February 7, 1952.)

*Messrs. Kaylor & Kaylor* and *Mr. Charles P. Schaber,* for appellee.

*Messrs. Baker, Hostetler & Patterson,* for appellant.

GUERNSEY, J. This is an appeal on questions of law. The action is one brought in the Common Pleas Court of Crawford County by Dwane Garrison, doing business under the style and firm name of Liberty Mills Sale & Daily Hog Market, North Manchester, Indiana, as plaintiff, against The Farmers and Citizens Bank & Savings Company, Bucyrus, Ohio, a banking corporation, J. E. Faulkner, Bucyrus, Ohio, and H. E. Sherk, Bucyrus, Ohio, and H. E. Sherk, order buyer of livestock, a partnership, as defendants. Subsequent to the commencement of the action J. E. Faulkner died, and H. F. Place who had been appointed as administrator with the will annexed of his estate was duly substituted in the place of said Faulkner as a party defendant to said action.

In his third amended petition the plaintiff, among other things, alleged that the said Sherk and Faulkner

had, during the times mentioned in the petition, been engaged as partners under the name of H. E. Sherk in the purchase and sale of livestock and that there was due and payable to the plaintiff from H. F. Place, administrator with the will annexed of the estate of J. E. Faulkner, deceased, for livestock sold and delivered to the said H. E. Sherk and J. E. Faulkner, doing business under the name of H. E. Sherk, the sum of $38,-191.87 with interest thereon from January 28, 1947. The cause was submitted to the jury on the third amended petition of the plaintiff and the answer of J. F. Place, as such administrator, the other defendants, including the said H. E. Sherk, who had been adjudicated a bankrupt, having been theretofore dismissed as parties to said cause.

On the trial of said cause the jury returned a verdict in favor of the plaintiff and against the said administrator in the sum of $47,739.84. Motion for new trial having been overruled, judgment was duly entered upon the verdict. It is from this judgment that this appeal is taken by the said administrator.

The defendant-administrator assigns error in a number of particulars, but in the view we take of this case a consideration of his first assignment of error that "the trial court erred in overruling defendant's motions for a directed verdict" will be dispositive of the entire case so that such assignment will be the only one considered.

In considering this assignment we have carefully checked the bill of exceptions and have found that during all the times complained of in the amended petition herein there existed a written agreement between Sherk and Faulkner, under the terms of which the said Faulkner loaned to the said Sherk from time to time various sums of money for the purpose of enabling the said Sherk to carry on the business of buy-

ing and selling livestock; that under the terms of said agreement certain fixed charges were made for the use of funds so loaned by the said Faulkner to said Sherk for the purpose aforesaid; that said agreement constituted the relationship between the parties thereto as one of creditor and debtor and was so drawn as to exclude any relationship as partners or joint adventurers; that the said Faulkner, as shown by documentary evidence in the cause, kept a complete and accurate record of all transactions had between him and Sherk pursuant to said agreement; and said record shows conclusively that the only relationship between Faulkner and Sherk with reference to the livestock business conducted by Sherk was that of debtor and creditor. The bill of exceptions further discloses that the plaintiff was not a witness at the trial of said action, and that there is no evidence tending to prove that the plaintiff had any notice or knowledge prior to the times he made the sales of livestock, which are the subject matter of this action, of the existence of Faulkner or of any relationship between Faulkner and Sherk, or of any statements or declarations made by said Faulkner concerning his relationship to the livestock business conducted by Sherk, which precludes the plaintiff from claiming any partnership between the said Faulkner and Sherk by way of estoppel.

The evidence relied upon by plaintiff as tending to prove a relationship other than creditor and debtor between the said Faulkner and the said Sherk is substantially as follows:

a. Testimony of various witnesses to the general effect that Faulkner was active in promoting the livestock business of Sherk.

b. Testimony of Sherk that during the years of 1946 and 1947 he and Faulkner divided (split) the "profits" made on hogs, that Faulkner received on

the division of such "profits" "$400 to $500 a week," and that when the profits were divided with Faulkner they included the profits that were made upon invoices that Faulkner gave Sherk a check for.

c. Testimony of Sherk to the effect that "about two months after the 19th day of April, 1946," Faulkner complained to him that "he was not making enough divvy on the transactions for the amount of money involved" and that "he was entitled to it and" they "should split half of what" they "were making." That Sherk said to Faulkner: "Do you want half of what we make and be partners; is that the way you want it?" and Faulkner said "That's the way it should be" and that from that time on "That's the way we [Sherk and Faulkner] tried to carry it on."

d. The testimony of one Connor and one Kirchner to the effect that Faulkner had stated to Connor and Kirchner that he and Sherk were partners in the business.

The question to be determined is whether the above mentioned evidence is sufficient to warrant the submission to the jury of an issue as to whether Sherk and Faulkner were partners or joint adventurers in said livestock business. We will consider such items of testimony in the order above set forth.

Participation in the profits of a business, though strong evidence of a partnership, is not necessarily the decisive factor. The persons making the profits must take them as principals in a joint business in which each has an express or implied authority to bind the other. Joint adventures are governed by the same rules. With this in mind we shall consider such items of testimony in the order above set forth.

a. The evidence in the case shows conclusively that Faulkner was realizing considerable sums of money upon his loans to Sherk pursuant to the terms of his

written agreement with Sherk and that Faulkner's efforts to promote said livestock business are attributable to his interest in maintaining or increasing his income from loans made to Sherk, and the evidence of such promotion does not in any way tend to prove that he was a partner or joint adventurer in said business.

b. In his testimony upon his examination before the referee in bankruptcy, Sherk testified positively that Faulkner was not a partner in and had no interest in the livestock business conducted by Sherk. In this cause he was questioned about such former testimony and, when asked, did not deny that he had so testified. It was the function of the jury to determine which part of Sherk's testimony was credible; and if there was evidence in the case tending to prove that Sherk and Faulkner were principals in the business and each had express or implied authority to bind the other, this evidence would require the submission to the jury of the question as to whether they shared in the profits of the business.

c. There is no evidence in the record other than the statement made by Sherk, mentioned in this item, tending to prove that Sherk and Faulkner after the date referred to in this item carried on the business as partners or divided the profits. This being the case, Sherk's statement, ''That's the way we tried to carry it on,'' is too indefinite and uncertain as to have any probative value.

d. The statements made by Faulkner to Connor and Kirchner that he and Sherk were ''partners'' in the business is a mere conclusion of law not warranted by any evidence in the case and did not tend to prove either a division of profits or mutual agency.

In all cases except partnership by estoppel, proof of the essential elements of partnership is necessary

for the submission of the issue of the existence of a partnership to the jury. The same rule applies to proof of a joint adventure. While, as above stated, item b of the evidence above referred to was sufficient if there was evidence in the case tending to prove mutual agency to warrant the submission of the question of division of profits in the hog business to the jury, we find on careful examination of the bill of exceptions no evidence warranting the submission to the jury of the question as to whether Faulkner and Sherk were principals in a joint business in which each had an express or implied authority to bind the other, but on the other hand find the following testimony of Sherk showing that neither had such authority:

"570. Do you recall being asked these questions and giving these answers which I am about to read to you, as a part of your deposition in the Kirchner case that I referred to a moment ago. Mr. Sherk [Pages 360 and 361 of the transcript]: 'He' refers to Mr. Faulkner.

" 'Q. He could not go out and buy any stock and charge it to you? A. No.

" 'Q. And you could not buy any stock and charge it to him? A. No.

" 'Q. On these stock barn deals, they contacted him? A. Yes.

" 'Q. He had no general authority to bind you for anything he did? A. No.

" 'Q. And you had no authority to bind him? A. I don't believe so.

" 'Q. You know the fact to be that you did not have, is that right? A. Yes.

" 'Q. And you never had any intention to go out and bind him for anything? A. No.

" 'Q. And he had no intention, so far as you know, to go out and bind you, did he? A. No, sir.

" 'Q. And you never did? A. No.'

"Q. Do you recall giving that testimony as I have read it? A. No; I don't recall it. I guess I must have.

"571. You would not say you had not so testified back in September of 1948? A. No, sir."

As there was no evidence tending to prove that Sherk and Faulkner were principals in a joint business in which each had an express or implied authority to bind the other, there was no proof of one of the essential elements of partnership or of joint adventure and the court erred in overruling defendant's motions for a directed verdict. For this error the judgment will be reversed and this court, rendering the judgment the trial court should have rendered, will render final judgment in favor of defendant-administrator and against plaintiff, at costs of plaintiff and plaintiff will be adjudged to pay the costs of this appeal.

*Judgment reversed.*

MIDDLETON, P. J., and JACKSON, J., concur.