Sᴇʟʟᴍᴀɴ ᴇᴛ ᴀʟ., Aᴘᴘᴇʟʟᴀɴᴛs, ᴠ. Sᴄʜᴀᴀf ᴇᴛ ᴀʟ., Aᴘᴘᴇʟʟᴇᴇs.

(No. 1063—Decided January 29, 1969.)

*Messrs. Smith & Smith, Mr. J. Ewing Smith* and *Messrs. McCulloch, Felger, Fite & Gutmann,* for appellants.

*Messrs. Schlafman & Elliott* and *Mr. James R. Goslee,* for appellees.

COLE, J. This case comes before the court upon a motion to dismiss an appeal taken on questions of law and fact.

The facts alleged in the pleadings and as set forth in the transcript of testimony indicate that in 1944 Harry E. Johnson and John P. Schooley dedicated a certain subdivision of part of Seminole Island in Indian Lake, Logan County, Ohio, known as Seminole Shores Subdivision No. 2. Some one hundred and sixteen lots were included in the subdivision, the plat being duly recorded. Among the lots were lots Nos. 85 and 86, both with shore line frontage, lot 85 being adjacent to and north of lot 86 with a common boundary between the two. The lots were surveyed and the lot corners designated by stakes or pins.

Subsequently, on August 26, 1950, lot 85 was transferred to Charles M. Grafelman and his wife, and on the same day lot 86 was transferred to Ralph D. Leatherman and his wife. Both lots at the time were bare land. Grafelman partially completed a house and constructed a boat dock, and about September 21, 1951, transferred lot 85 to the plaintiffs, Reuben Sellman et al., who completed the house. Title to lot 86 remained in the Leathermans until May 10, 1956, when they transferred title to the defendants, Charles L. Schaaf and his wife. Sometime in 1960 a dispute developed as to the location of the boat dock erected originally by the Grafelmans and as to the boundary line between the two lots.

On October 19, 1960, the Sellmans filed a petition against the Schaafs praying for a temporary and permanent injunction enjoining the Schaafs from interfering with their possession of lot 85.

To this the defendants, Schaafs, filed answer and a cross-petition setting forth four causes of action:

1. In ejectment for recovery of real estate.

2. For damages for wrongful use of real estate.

3. For prospective damage for continued use of the real estate.

4. To quiet title, and also for a mandatory injunction to require plaintiffs to remove the boat dock from their premises.

Thereafter plaintiffs filed an amended petition join-

ing as defendants the Grafelmans, their predecessors in title, Mrs. Leatherman, a Mr. Cory owning lots 87 and 88 and the original dedicators John P. Schooley and Harry E. Johnson. They then prayed for a temporary and permanent injunction against the Schaafs from interfering with the plaintiffs' use of the boat dock, a mandatory injunction to remove a steel fence erected by defendants Schaafs, for a determination of the true boundary line of the premises, an injunction against Cory, Schooley or Johnson asserting title to the premises and, in the alternative, if the court found in favor of defendants Schaafs' claims as to the boundary, damages against Grafelman and Johnson. Subsequently Cory and Schooley were dismissed as defendants by the court. A supplemental answer and reply were filed and issues were joined, the temporary injunction having been allowed.

The judgment and order from which appeal was taken dissolved the temporary injunction and by implication denied plaintiffs' petition for permanent injunction, granted defendants Schaafs possession of "all parts of plaintiffs' boat dock as are situated on the Schaaf land as shown by the survey of William Lewis" and quieted title to this area in the Schaafs. Damage claims by Schaafs against Sellman were deferred as were damage claims of Sellman against Johnson and Grafelman. No judgment or finding was made against Mrs. Grafelman or the Leathermans, and a finding was made that "since the defendant Johnson was brought into the case in the 12th year after the signing of the deed that Revised Code 2305.06, controls and it provides such action should be brought within 15 years."

There was no determination made as to the Schaafs' prayer for a mandatory injunction to require plaintiffs to remove the dock from the Schaafs' land.

Notice of appeal on questions of law and fact was filed by the plaintiff, and the defendants moved to dismiss on questions of law and fact.

The first problem presented by this motion is not whether this appeal is properly on questions of law and fact, but whether it is timely taken in any event. We do not here consider the question as to the effect of the constitutional amendment of May 5, 1968, on the jurisdiction of

Courts of Appeals in law and fact appeals as that question in the view of the case here taken does not arise. It is clear from the record and transcript that the case in the Common Pleas Court is not concluded. All damage issues remain and perhaps the equitable issue as to a mandatory injunction requested by the defendants Schaafs. Under these circumstances we must determine whether at this time the case is properly appealable on questions of law and fact.

The statutory grant of jurisdiction to Courts of Appeals is set forth in Section 2501.02, Revised Code, which in part reads as follows:

"* * * in addition to the original jurisdiction conferred by Section 6 of Article IV, Ohio Constitution, the court shall have jurisdiction:

"* * *

"Upon an appeal on questions of law and fact the Court of Appeals in cases arising in courts of record inferior to the Court of Appeals within the district, shall weigh the evidence and render such judgment or decree as the trial court could and should have rendered upon the original trial of the case, in the following classes of actions, seeking as primary and paramount relief:

"* * *

"In all cases not falling within the classes designated above the Court of Appeals shall have jurisdiction to proceed as in an appeal on questions of law only."

This court has held in the case of *Mories* v. *Hendy*, 1 Ohio App. 2d 349, that these paragraphs granting jurisdiction do not authorize partial appeals but only appeals of entire cases. As therein set forth in the opinion, at page 354:

"It appears obvious that the Legislature contemplated and intended there should normally be only one appeal of a 'case' to the Court of Appeals, that that appeal should be of the 'case' in its entirety, including all *causes of action* therein, and that the Court of Appeals should proceed to consider the entire case on appeal in only one of two different manners, *i. e.*, either (1) as an appeal on questions of law and fact if the primary and paramount relief sought is that of one of the ten designated classes of actions, or

(2) as an appeal on questions of law only in all other cases."

In the present situation there are numerous causes of action, some being equitable and within the enumerated classes appealable on questions of law and fact. Others are actions of law. Which is the primary and paramount relief requested is immaterial at this stage for the entire case has not been disposed of as yet. There still remain untried causes of action to resolve before the "case" is completed. At that point, on appeal the question would then arise: Is the primary and paramount relief such as to fall within the enumerated classes? At this point we have only a part of a "case" and the appeal is premature.

As in *Mories* v. *Hendy, supra,* a second approach to the same problem is possible, re-enforcing the conclusion there and here reached. This is the approach which raises the question: Is there in fact in this appeal a final order or judgment from which an appeal can be properly taken?

In 2 Ohio Jurisprudence 2d 598, Section 32, it is said: "A preliminary or interlocutory order is not reviewable on appeal on questions of law. General policy is opposed to separate review upon interlocutory orders. The prompt and orderly disposal of litigation is an object much to be desired, and the entertainment of appeals from various orders made by the trial court during the progress of the main action is not in pursuance of such object."

See *In re Will of Thomas,* 84 Ohio App. 30.

Obviously this order was a type of halfway mark in the case. Had this decision been the other way—in favor of plaintiff—all issues would have terminated, for his injunction would have become permanent, his alternative request for relief moot, and the relief asked by defendant denied. However, since the issue of the boundary dispute has been determined in favor of the defendants, all damage claims are still alive and so is defendants' prayer for a mandatory injunction. Is the order then interlocutory or of sufficient scope as to constitute a final order?

In the very early case of *Teaff* v. *Hewitt,* 1 Ohio St. 511, the court says, at page 520:

"A final decree is one which determines and disposes

of the whole merit of the cause before the court *or a branch of the cause which is separate and distinct from the other parts of the case,* reserving no further questions or directions for future determination; so that it will not be necessary to bring the cause *or that separate branch of the cause again* before the court for further decision. It is true, that after final decree defining and settling the rights of the parties, further orders or decrees may be necessary to carry into effect the rights settled by the final decree on the merits; such as a decree confirming a sale, or confirming the proceeding or report of a master, carrying into effect the terms of the final decree. This, however, is a subsequent proceeding, and only auxiliary to or in execution of the final decree on the merits of the case.'' (Emphasis added.)

This would indicate an alternative aspect to a final order in which it could exist when the order terminates the whole case, or where it terminates a ''separate and distinct'' branch of the case.

The much later case of *Ohio Natl. Life Ins. Co.* v. *Struble,* 80 Ohio App. 531, relies on this concept in a proceeding where an action for mutualization by an insurance company was consolidated with an action to enjoin the mutualization, and in the alternative to determine the fair cash value of dissenting shareholders' stock. The court ordered mutualization and found the shareholders to be dissenting shareholders and appointed appraisers to determine the fair cash value of their stock. The Court of Appeals held this to be a final order, saying, ''It has long been the rule in this state that a court can finally dispose of a separate and distinct cause of action and reserve other issues for future consideration and adjudication without destroying the finality of the order made.''

The *Teaff* case was before the Supreme Court in 1851 and decision rendered in the January term 1853. On March 11, 1853, thereafter the 50th General Assembly enacted the Code of Civil Procedure but included therein no definition of ''action.''

In 1897 in the case of *Missionary Society* v. *Ely,* 56 Ohio St. 405, the Supreme Court first defined this word as it is now defined in the Code. Subsequently in the codifi-

cation of 1910 which became the General Code of Ohio this definition was included and has become, unchanged, Section 2307.01, Revised Code. It reads as follows:

"An action is an ordinary proceeding in a court of justice, involving process, pleadings, and ending in a judgment or decree, by which a party prosecutes another for the redress of a legal wrong, enforcement of a legal right, or the punishment of a pubic offense."

Section 2505.02, Revised Code, defines a final order:

"An order affecting a substantial right in an action which in effect determines *the action* and prevents a judgment, an order affecting a substantial right made in a special proceeding * * * is a final order * * *." (Emphasis added.)

The difference between the two situations is that in a special proceeding the order must merely affect a substantial right but in a civil action it must "determine the action and prevent a judgment."

In the instant case we do not have a special proceeding. An action for injunction falls within the definition of "action" above as do all the alternative reliefs requested by plaintiff. Action to quiet title and to recover land, although designated in the Revised Code as "Special Remedies," are considered civil actions. 1 Ohio Jurisprudence 2d 284, Section 22. Therefore the final order to be appealable must determine the action and prevent a judgment. If it lacks one of the three qualifications of (a) affecting a substantial right, (b) determining the action, or (c) preventing a judgment, it cannot be a final order, for all three attributes must concur to make it such.

Although the *Teaff case, supra*, spoke of determining or disposing of the whole merits of the cause before the court *or* a branch which is separate and distinct from other parts of the case, the statutory definition does not create two types of final orders, one for the whole and one for a branch; it says a final order must determine the "action."

The action as defined since 1910 by statute is an ordinary proceeding ending in *a* judgment or decree. Hence, to determine the action is to terminate the proceedings. It deals not with "cause of action" but with the entire proceeding initiated by plaintiffs' petition, irrespective of how

many cause of actions or branches there may be in the case, and therefore as long as there remain unresolved claims of the plaintiff or cross-claims of the defendant, there is no determination of the action or proceeding. It is still pending, and the order is not final but interlocutory in character.

In the case of *Von Gunten* v. *New Justice Coal Co.*, 147 Ohio St. 511, the issue involved the question as to whether a judgment was prematurely entered. The court quotes with approval from 46 Corpus Juris 292, Section 259:

"Where only part of the issues are submitted to and determined by the jury, proceedings for a new trial taken before there is a finding upon, or decision of, the remaining issues by the court are premature, unless the verdict of the jury upon the issues submitted to them completely disposes of the case adversely to the party applying for a new trial."

The court concludes the order in that case was premature.

In *Jones* v. *Jones*, 72 Ohio Law Abs. 259, the first paragraph of the syllabus reads as follows:

"An order, to be a final appealable order, must, in effect determine the action, and if after an order the action still remains pending, awaiting some further order as to the rights of the parties, it can not be considered a final order."

See also *Diemer* v. *Putnam County Farmers Mutual Ins. Co.*, 81 Ohio App. 185; *Mories* v. *Hendy, supra; American Mall, Inc.*, v. *City of Lima*, 8 Ohio App. 2d 181; *Rose* v. *Rose.* 92 Ohio Law Abs. 321.

In the *Struble case, supra*, the reliance of the court upon the *Teaff case* would not appear crucial, for that case involved essentially two separate law suits which were consolidated for trial and the order to which appeal was allowed in effect determined what had been one of the originally separate proceedings or actions.

Such is not the case here. What began with plaintiffs' petition is and always has been one action involving several causes of action. Much remains to be disposed of before the action is determined.

We would conclude that the concept of the *Teaff case*

that a separate branch of a case can be the subject of a final order has been eliminated by the statutory definition of action as the whole proceeding or case. However, the second concept of that case involves the question as to what order "determines" the case. There are many times supplementary orders executing and applying rights determined in a prior order. The *Teaff case* distinguishes between final orders terminating the action in that the rights of the parties are settled and defined, and auxiliary proceedings which are subsequent to such an order and essential to carrying into effect this determination of rights.

This distinction has been preserved in later decisions. In *Queen City Savings & Loan Co.* v. *Foley,* 170 Ohio St. 383, the court holds that a judgment determining a mortgage to be a first and best lien was a final order. In a previous case, *State, ex rel. K-W. Ignition Co.,* v. *Meals et al., Judges,* 93 Ohio St. 391, which the court cites, it has been said, dealing with an order decreeing an accounting and appointing a referee to determine amounts due (page 395):

"The general equities of the case were found in favor of the plaintiff, and while the further order of the court was necessary to carry into effect the right settled by the order, it was merely auxiliary to or in execution of the order of the court made on the merits of the case, and we are of the opinion that the Court of Appeals had jurisdiction of the subject matter on appeal."

See, also, *Johnston* v. *Denton,* 105 Ohio St. 285 (partition action); *Shuster* v. *North American Mortgage Loan Co.,* 139 Ohio St. 315 (accounting); *Lewis* v. *Hickok,* 149 Ohio St. 253. See, also, *City of Euclid* v. *Vogelin,* 152 Ohio St. 538.

The general purport of these cases appears to be that although there still remains something to be done in an action, if the general equities and rights of the parties have been settled by an order, that order determines the action and is final even though supplementary and executive orders may still be necessary to fully implement the rights so determined.

It will be noted these cases which are predicated on the concept that an order "determines the action" when it determines the general equities or rights of the parties

78

primarily deal with one basic cause of action. In foreclosure the essential prayer is for the order of foreclosure. Once this is determined the rest of the case is simply in furtherance of this order. However, in the instant case there is no single basic cause of action to which what remains to be done is simply supplementary. Here the plaintiffs have plead in the alternative. If they are found to own the land in question, they want injunctive relief; if they do not, they want damages against their predecessors in title under warranties. This second cause of action is not only inconsistent with the first but never really comes into existence until the first has been determined adversely to the plaintiffs. It thus is not executory or supplementary to the first but now becomes the plaintiffs' sole and major cause of action predicated upon the court's determination of their first cause of action. In this respect we have a situation analogous to the case of *Mories* v. *Hendy, supra,* where the second cause of action came into existence upon the determination of the first.

What still remains in the case is not auxiliary, supplementary or in execution of what has been done. What remains to be done is the determination of one of the two primary alternative causes of action asserted by the plaintiffs.

We would therefore conclude that the order of June 10, 1968, does not "determine" the action. It merely determines on which cause of action the plaintiffs will proceed further. It simply disposes of one cause of action and leaves the alternative cause of action still to be heard. It is thus not a final order.

This conclusion is bulwarked by a consideration of the last element essential to a final order—that it must prevent a judgment. While it is true the order of June 10, 1968, removes the possibility of and prevents a judgment for injunction, it does not prevent the alternative relief of judgment against plaintiffs' predecessors in title.

We are thus presented with an order which, although it affects a substantial right, neither determines the action nor prevents an ultimate judgment for plaintiffs on their alternative prayer for judgment against Johnson and Grafelman—a matter specifically reserved for future hearing.

We conclude that there is no final order from which an appeal on questions of law may be taken.

A judgment is defined by Section 2323.01 of the Revised Code of Ohio as a "final determination of the rights of the parties in action." For the same reasons that are set forth above there is obviously no judgment.

Since therefore there is neither a judgment nor a final order from which an appeal on questions of law or law and fact can be taken, this appeal is premature and is dismissed both on questions of law and questions of law and fact.

*Judgment accordingly.*

Guernsey, P. J., and Younger, J., concur.