WALTON ET AL. *v.* ELFTMAN, ADMX.

(No. 78-981112—Decided October 3, 1980.)

Court of Common Pleas of Cuyahoga County.

*Mr. Robert B. Henn,* for plaintiff.

*Mr. Clifford E. Bruce* and *Mr. Joseph Schneider,* for defendant.

GEORGE J. MCMONAGLE, J.   The complaint in this non-jury trial is one where the plaintiff is asking for recovery by way of a money judgment for injuries and damages sustained in a two-car collision that occurred on September 21, 1977, at the intersection of Prospect Avenue and Rt. 82 in Strongsville, Ohio. Traffic at the intersection is controlled by a conventional automatic traffic signal. Plaintiff was the driver of one vehicle and the driver of the other vehicle was Eric Elftman, who was killed in the collision. An answer and counterclaim were filed

by Roberta Elftman, the administratrix of the estate of Eric Elftman. She asks for recovery as administratrix of losses sustained as a result of the death of her husband.

The court feels it important before reviewing the issues and facts to discuss evidentiary matters that arose herein and are governed by the Ohio Rules of Evidence which became effective on July 1, 1980.

This action came on for trial on September 9, 1980. Since the defendant was the administratrix of the estate of a deceased person, the right of the plaintiff to testify was called into issue. The so-called Ohio Dead Man's Statute, R. C. 2317.03, had been in effect for many years. This provided as follows:

"A party shall not testify when the adverse party is the guardian or trustee of either a deaf and dumb or an insane person or of a child of a deceased person, or is an executor or administrator, or claims or defends as heir, grantee, assignee, devisee, or legatee of a deceased person except: * * * [While it may be questionable as to whether one or more of the exceptions could apply in this action, in view of the court's ruling herein, none of the exceptions are material or applicable.]"

This statute is self-explanatory and had been upheld on many occasions by the courts. All law students were instructed that this statute had been enacted in order that injustices would not result because a decedent obviously could not refute testimony given by a living party to the lawsuit. Students were instructed that by virtue of this statute, "where death had closed the mouth of one party to a lawsuit that the law was closing the mouth of the other party." This statute, if in effect on September 9, 1980, would therefore bar testimony by the plaintiff in this case.

The Ohio Rules of Evidence have been duly adopted in accordance with Section 5(B), Article IV of the Ohio Constitution, effective May 7, 1968, which, in part, provides:

"The supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right. Proposed rules shall be filed by the court, not later than the fifteenth day of January, with the clerk of each house of the general assembly during a regular session thereof, and amendments to any such proposed rules may be so filed not later than the first day of May in that session. Such rules shall take effect

on the following first day of July, unless prior to such day the general assembly adopts a concurrent resolution of disapproval. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."

This constitutional provision transferred the authority to regulate practice and procedure in litigation from the legislature to the Supreme Court of Ohio. While it authorized the Supreme Court to regulate the practice and procedure in all courts, it did not authorize any changes in substantive law; and where a conflict may exist between a statute and a rule with respect to practice and procedure in the courts, the rules shall prevail.

The Supreme Court has obviously determined that the Rules of Evidence constituted rules of practice and procedures and did not affect substantive rights. The Ohio Rules of Evidence were duly filed with the clerk of each house of the General Assembly prior to January 15, 1980. On the other occasions since 1976, both houses had adopted concurrent resolutions of disapproval of the Rules of Evidence as submitted by the Supreme Court. Subsequent to the said filings of 1980, the Ohio Senate had adopted a resolution of disapproval prior to July 1, 1980, but the House had not adopted such a resolution prior to July 1, 1980. Therefore, there was no concurrent resolution of disapproval of the Ohio Rules of Evidence and they became the law of Ohio on July 1, 1980. Rule 1102 provides:

### "EFFECTIVE DATE

"These rules shall take effect on the 1st day of July, 1980. They govern all proceedings brought after they take effect and also all further proceedings in actions then pending, except to the extent that in the opinion of the court, their application in a particular action pending when the rules take effect would not be feasible or would work injustice, in which event former evidentiary principles apply."

The further proceedings referred to would constitute the trial of the within case. This action was filed prior to July 1, 1980, and its trial proceedings therefore governed by the Ohio Rules of Evidence.

Rule 601 governs the competency of parties and it provides:

## "GENERAL RULE OF COMPETENCY

"Every person is competent to be a witness except: ***[The exceptions pertain to children, those of unsound mind, a spouse testifying against another spouse, an officer enforcing traffic laws, a person giving expert testimony on the issue of liability in a malpractice action, and are not applicable in the within action.]"

Rule 601 repeals the Dead Man's Statute, R. C. 2317.03, by implication. The writer of this opinion was a member of the Advisory Committee to the Supreme Court of Ohio on the Rules of Evidence and the Staff Notes thereto express his opinion as to the effect of Rule 601 on R. C. 2317.03. The Staff Notes state:

"Rule 601 supersedes R. C. 2317.03, the Dead Man's Statute. By declaring all witnesses to be competent and not providing an exception for the exclusionary provisions of the Dead Man's Statute, a conflict between the rule and the statute is created, and the statute is superseded under constitutional provisions. Concomitantly, Rule 804(B)(5) provides that the statements formerly excluded by the Dead Man's Statute are exceptions to the hearsay rule."

The court finds that said Rule 601 does in fact supersede and repeal by implication R. C. 2317.03 and permitted the plaintiff to testify.

Rule 804(B)(5) which is a part of Rule 804, Hearsay Exceptions; Declarant Unavailable, reads as follows:

"(5) *Statement by a deceased, deaf-mute, or incompetent person.* The statement was made by a decedent, or a deaf-mute who is now unable to testify, or a mentally incompetent person, where (a) the estate or personal representative of the decedent's estate, or the guardian or trustee of the deaf-mute or incompetent person is a party, and (b) the statement was made before the death or the development of the deaf-mute condition or the incompetency, and (c) the statement is offered to rebut testimony by an adverse party on a matter which was within the knowledge of the decedent, deaf-mute, or incompetent person."

This rule was adopted in order hopefully to eliminate any likelihood of injustice resulting from the fact that a living party to a dispute could testify and obviously without the ability to present testimony from the deceased party. This rule,

therefore, permits the admission into evidence of a statement made by a decedent to a third party to rebut testimony by the living party. Prior to the adoption of this rule, such testimony would be clearly excluded under the Hearsay Rule.

The decedent herein died at the time of the collision and made no statement which could have been presented to rebut testimony of the plaintiff. Obviously, there would be no opportunity to cross-examine a decedent, but a person testifying as to such a statement of the decedent would be subject to cross-examination.

Plaintiff offered testimony by a witness, Ruth Justice, that her minor son, who was in the car with her at the time of the collision, exclaimed at about the time of the impact, "The blue car could not stop." Objection to this being permitted in evidence was overruled. The ruling was in accordance with the following rule:

## "Rule 803
## "HEARSAY EXCEPTIONS;
## "AVAILABILITY OF DECLARANT IMMATERIAL

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"(1) *Present sense impression.* A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness.

"(2) *Excited utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
"* * * ."

The plaintiff called Bernice Frantz as a witness and then essentially attempted to impeach her testimony by means of a prior inconsistent statement. This would not have been permissible under the prior law based upon the "voucher rule". This testimony was permitted herein based upon the following rule:

## "Rule 607
## "WHO MAY IMPEACH

"The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent

statement only upon a showing of surprise and affirmative damage. This exception does not apply to statements admitted pursuant to Rules 801(D)(1)(a), 801(D)(2), or 803."

Proceedings governed by Rules 612 and 613 were also utilized as now provided by the Ohio Rules of Evidence.

### "Rule 612
### "WRITING USED TO REFRESH MEMORY

"Except as otherwise provided in criminal proceedings by Rule 16(B)(1)(g) and 16(C)(1)(d) of Ohio Rules of Criminal Procedure, if a witness uses a writing to refresh his memory for the purpose of testifying, either: (1) while testifying; or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing. He is also entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. * * *"

This rule sets at rest questions which have previously arisen, with respect to the adverse party's right to see a writing that a witness had used to refresh his memory. It was never previously disputed that the adverse attorney was entitled to examine any writing used by a witness (while testifying). This now states the rule with respect to writing seen or used before the witness takes the stand.

### "Rule 613
### "PRIOR STATEMENTS OF WITNESSES

"(A) *Examining witness concerning prior statement.* In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel.

"(B) *Extrinsic evidence of prior inconsistent statement of witness.* Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded a prior opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(D)(2)."

The procedures followed herein were consistent with this

rule. Contrary to the prior procedures, the witness himself was not shown the inconsistent statement (although his lawyer was) before being questioned concerning it. Then the inconsistency was established after laying the prerequisite foundation. The entire written statement which included the inconsistency was not admitted into evidence. Only the oral testimony with respect to it was before the jury.

The complaint alleges that on September 22, 1977, the plaintiff, Peter Walton, was operating his automobile lawfully on the public highways; and that the decedent violated the red traffic signal, and thereby caused the injuries and damages alleged by plaintiff. The defendant denies her decedent violated the traffic signal and avers that her decedent was driving west on Rt. 82; that he had the green light upon entering the intersection; that the defendant was headed north on Prospect Avenue and entered the intersection against the red light.

In testimony, the plaintiff stated he was headed west on Rt. 82 and evidence tendered in support of the plaintiff was to the effect that the decedent was headed south on Prospect Avenue.

Material issues were the following:

(1) On what road had the plaintiff been proceeding when he entered the intersection;

(2) The direction in which the plaintiff had been proceeding when he entered the intersection;

(3) On what road had the decedent been proceeding;

(4) In what direction had the decedent been proceeding when he entered the intersection;

(5) What was the color of the traffic signal to him when plaintiff entered the intersection;

(6) What was the color of the traffic signal to the decedent when he entered the intersection.

The evidence with respect to each of the above issues was in dispute.

The collision occurred in about the center of the intersection and the two vehicles were so propelled that the decedent's car came to a stop headed in a southerly direction with the plaintiff's car somewhat alongside of it and also headed in a southerly direction. The point of impact on the decedent's car was on its left side near the driver's seat. The point of impact

on the plaintiff's car was in the right front area. It is possible from the position of the vehicles after the collision and the damage to them that the decedent had been proceeding in a westerly direction on Rt. 82 and was struck by the plaintiff's car northbound on Prospect Avenue, with both cars propelled against a pole at the northwest corner of the intersection. It is also possible to infer that the decedent had been headed south on Prospect Avenue when he entered the intersection and was struck by the plaintiff headed west on Rt. 82.

The first witness, a Bernice Frantz, testified she was a passenger in a pick-up truck operated by her father headed south on Prospect Avenue. The light went yellow to red and they stopped. After they stopped, she saw a blue Ford Pinto (the Elftman car was blue) coming from the opposite direction trying to make the yellow light, and it skidded. She also testified the traffic light was green when the Elftman car entered the intersection.

Ruth Justice testified she was northbound on Prospect, came to a full stop on Rt. 82, with the traffic light red to her; that she saw the blue Elftman car headed south on Prospect and the plaintiff's car headed west on Rt. 82; that the traffic light was red for the Elftman car and to her.

Scott Hennis testified he was headed west on Rt. 82 following the red plaintiff's car; that the decedent was southbound on Prospect and tried to beat the yellow light; that the signal showed green for the plaintiff and red for the decedent when they entered the intersection.

R. Gregory Hedglen testified that he was headed east on Rt. 82. As he approached the intersection, the signal turned red to him and he stopped about forty feet back; that the plaintiff was headed north on Prospect Avenue and the decedent was headed west on Rt. 82; that decedent pushed the plaintiff's car into the pole at the northwest corner. His testimony also includes the following:

"I believe the driver of the tomato car [plaintiff] was trying to make it through before the light turned red, and the driver of the blue car was timing it to be green for his passage. I estimate the speed of both vehicles to be 35-40 mph."

Plaintiff testified that he was proceeding west on Rt. 82 after having left his home on Prospect Avenue, traveled east on Lunn Road to Pearl Road to procure a newspaper, but be-

ing unable to do so, he was headed toward the intersection of Prospect and Rt. 82, and having observed that there was no paper in the vending machine outside the drugstore in the shopping center, he intended to proceed further west past Prospect Avenue to attempt to procure the paper; that he had the green light to Rt. 82 traffic when he entered the intersection, and the next he knew, the accident occurred; that he had not previously seen the Elftman car before the collision occurred. In the statement he gave the police following the accident, he stated:

"I, Peter Walton, did leave my home at 16538 Prospect at approximately 10:15 on 21 September. I drove north on Prospect Road toward Royalville Plaza to get a newspaper. As I approached the intersection of Prospect and Rt. 82, the traffic light was green. I slowed down, prepared to stop if the light were to change. It did not change. I then proceeded through the light, I was halfway through the intersection, and there was a blue car in front of me. Both cars made contact."

The plaintiff gave the following answers to interrogatories filed in the case.

"(7) On what road were you driving?

"ANSWER: Because of the impact of the accident, I cannot be positive. I believe it was on Royalton Road.

"(13) On what road was Elftman?

"ANSWER: Prospect Road headed south."

In his deposition, he stated when he left his home, he went north on Prospect to Lunn Road; that he didn't know where the other car came from; and that he was driving:

"QUESTION: As a matter of fact, were you not driving north on Prospect when you approached 82? Is that a fact?

"ANSWER: No, sir. I believe—I don't know. This is the way I'm trying to place this thing. I have been thinking about this thing for two years, trying to decide why this all came about."

It was the testimony of Mrs. Elftman that her husband, who was a certified public accountant, was working in Mentor, Ohio on September 21, 1977; that it was his habit in travelling from his place of employment to his home to proceed westerly on Rt. 82.

This testimony, in the opinion of the Court, was proper

under Rule 406 as bearing upon the issue as to the road he was travelling immediately prior to the collision.

"Rule 406
"HABIT; ROUTINE PRACTICE

"Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."

Despite the confused testimony of the plaintiff, the court has determined, based upon a consideration of all the evidence presented at the trial, and by a preponderance thereof, that the decedent was in fact driving southerly on Prospect Avenue and the plaintiff was driving westerly on Rt. 82. The court further finds by a preponderance of the evidence that the plaintiff entered the intersection of Rt. 82 and Prospect Avenue with the green light before the decedent was in the intersection, and the failure of the decedent to yield the right of way to the plaintiff was the proximate cause of the collision and injuries sustained by the plaintiff.

The court therefore finds that the plaintiff is entitled to recovery and judgment from the defendant herein for the injuries and damages he sustained in the said collision. A journal entry is therefore being entered concurrently herewith in favor of the plaintiff and against the defendant, for the sum of $6,500, for which judgment is being entered. The counterclaim of the defendant is therefore being dismissed at the costs of defendant.

*Judgment for plaintiff.*