SIMANDL ET AL., APPELLEES, *v.* SCHIMANDLE, ADMR., APPELLANT.

(No. 43899—Decided March 25, 1982.)

*Mr. John T. Price,* for appellees.
*Mr. Thomas C. Vanik,* for appellant.

MARKUS, J. Defendant appeals from a judgment granting plaintiff an accounting for one-half of the real property and business of an informal partnership conducted by plaintiff's decedent and defendant's decedent,[1] and granting judgment for an unpaid debt owed plaintiff herself by defendant's decedent. Defense counsel argues that the trial court's findings of a partnership and an unpaid debt were against the manifest weight of the evidence, that plaintiff cannot recover her decedent's share in any such partnership, and that plaintiff's testimony about prior transactions should have been barred by the Dead Man's Statute.[2] We find no merit in these contentions.

The evidence established that the Simandl family participated in the operation of a gas station and combination delicatessen and magazine stand. The family members involved were George Simandl (plaintiff's decedent), Albina Simandl (George's wife, executrix of his estate, and plaintiff here), Clarence Simandl (George's brother and defendant's decedent), and Lillian Simandl (George's sister). The business began in 1942 with the operation by George and Clarence of the gas station, and it subsequently grew to include the delicatessen and rental of adjacent business properties.

The land on which the businesses were conducted was originally obtained by Clarence and George in 1938 by a warranty deed for 6.638 acres, the majority of

---

[1] While further proceedings are contemplated in the trial court to determine the precise amount owed to plaintiff, the trial court's decision as to the general equities of the parties in the property is appealable. *Shuster* v. *North American Mtge. Loan Co.* (1942), 139 Ohio St. 315 [22 O.O. 377]; *Lewis* v. *Hickok* (1948), 149 Ohio St. 253 [36 O.O. 568]; cf. *Queen City Savings & Loan Co.* v. *Foley* (1960), 170 Ohio St. 383 [11 O.O.2d 116] (determination of lien priority is appealable); *Sellman* v. *Schaaf* (1969), 17 Ohio App. 2d 69, at 74 [46 O.O.2d 91].

[2] Defendant's Assignments of Error read as follows:

"Judge John L. Maxwell, Court of Common Pleas, Cuyahoga County, improperly ruled on the strength of the evidence presented at trial, that George Simandl was a partner with Clarence Simandl, in all respects with regard to certain real property located in North Royalton, Ohio, and that Clarence Simandl held the real property in trust for the benefit of himself and George Simandl.

"Alternatively, Judge Maxwell, upon concluding that a partnership existed, ruled that Albina Simandl, as spouse and heir of George, is entitled to a portion of the real property contrary to partnership law in the State of Ohio.

"Judge Maxwell improperly ruled on the strength of the evidence, that Clarence Simandl was indebted to Albina Simandl in the amount of $5413.76.

"Judge Maxwell errored [*sic*] in permitting Albina Simandl's testimony concerning representations made to her by Clarence Simandl to be admitted into the record contrary to the Dead Man's Statute."

which remained undeveloped until 1972. In 1942, a nearby but non-contiguous parcel was acquired in the names of George, Albina, and Clarence; it served as George and Albina's residence. The purchase of that residence property was financed with a mortgage covering both properties.

In 1946, both parcels were transferred by quitclaim deed from Clarence and his then wife to George. In 1947, the 6.638 acre business property was transferred by warranty deed from George and Albina back to Clarence. Albina testified that the intra-family transfers were made to aid the credit of appropriate family members when they were making other investments. Finally, in 1972, approximately 5.5 acres of the 6.638 acre business property was sold to non-family interests by a warranty deed from Clarence. The Simandl lawyer for that transaction testified that the proceeds from that sale were divided equally between George and Clarence. The Simandl businesses continued on the remaining business acreage after George's death in 1978 until Clarence's death in 1979, with Albina's participation in her deceased husband's place after he died.

Evidence showed that all receipts from the Simandl businesses were commingled, except rentals from the adjacent business properties which went directly to George and Albina. George and Albina maintained a checking account for the joint family business purposes. George and Clarence each made business decisions.

In support of her claim that Clarence owed her money personally, Albina testified she issued a check to an automobile dealer at Clarence's request in December 1978, so Clarence could purchase a new automobile. She further testified that Clarence failed to repay that $5,413.76 as he had promised to do.

After Clarence's death, Albina filed a claim against Clarence's estate on her own behalf and in her capacity as executrix of George's estate for one-half interest in the remaining acreage, the gas station, and other businesses operated there. As administrator of Clarence's estate, defendant denied that claim, as well as Albina's personal claim for the alleged outstanding debt of $5,413.76. Albina then initiated this action.

The trial court found that George and Clarence Simandl were partners and ordered an accounting. The court further found for plaintiff on her claim for the $5,413.76 loan.

I

Defendant's counsel first contends the weight of the evidence does not support the trial court's findings that Clarence and George Simandl were partners, that the real estate where the businesses were operated was held by Clarence in trust for George and himself, and that Clarence owed Albina $5,413.76.

R.C. 1775.05(A) defines a partnership:

"A partnership is an association of two or more persons to carry on as co-owners a business for profit."

R.C. 1775.06 provides guidelines for determining the existence of a partnership.[3] A court can properly find a partner-

---

[3] R.C. 1775.06 provides:

"In determining whether a partnership exists, these rules apply:

"(A) Except as provided by section 1775.15 of the Revised Code, persons who are not partners as to each other are not partners as to third persons.

"(B) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of property.

"(C) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.

ship exists from evidence that there has been a sharing of net profits from a continuing business operated by two or more persons, where each is capable of binding the business entity.

Plaintiff Albina testified that George and Clarence operated the gas station and other businesses together, and that they shared in the receipts of the businesses and the profit from the sale of part of the realty in 1972. Other witnesses testified that building permits were issued for construction on the property in the names of both George and Clarence as owners of the property, that both George and Clarence signed contracts for the purchase of merchandise sold at the gas station for a period of ten to twelve years, that the two brothers ran the business together and made business decisions only after consulting each other, and that it appeared to several witnesses who had done business with the brothers that they were partners.

The attorney who represented the brothers in 1972 for the sale of part of the business property testified both George and Clarence were surprised to find the title was in Clarence's name only, and the proceeds from the sale of the property were divided equally between George and Clarence. Finally, a barber who operated his shop next to the gas station on the Simandl property testified Clarence had stated the two brothers ran the business together.

Plaintiff Albina's testimony concerning division of receipts from the various businesses was somewhat confusing, and the exact share received by Clarence and George is unclear. However, there was abundant testimony that George and Clarence both shared in the net proceeds of the businesses, both acted as co-owners, each made business decisions, and each was able to bind the other. Therefore, there was abundant unrebutted evidence to support the court's finding that an equal partnership existed between the two brothers. R.C. 1775.05; R.C. 1775.06; *Southern Ohio Pub. Serv.* v. *Pub. Util. Comm.* (1926), 115 Ohio St. 405; *Garrison* v. *Place* (1952), 92 Ohio App. 239 [49 O.O. 339].

Further, evidence from plaintiff Albina and the attorney who represented the brothers in the 1972 realty sale supported the court's finding that Clarence held the real property in trust for George and himself. Plaintiff testified the property was deeded to Clarence from George and Albina in 1947 to assist Clarence in raising investment capital. The evidence as a whole showed that the property was used as partnership property. When they sold part of the business property they were surprised to find that it was titled solely in Clarence's name, and they divided the resulting profit equally.

Defendant's counsel also challenges the finding that Clarence owed plaintiff Albina $5,413.76. Plaintiff testified she wrote a check for $5,413.76 at Clarence's request for the purchase by Clarence of an automobile. She further testified Clarence orally promised to repay her the amount of the check, but failed to do so. No rebuttal evidence was offered by defendant. As the initial trier of fact the trial court was not required to accept the

---

"(D) The receipt by a person of a share of the profits of a business is prima-facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

"(1) As a debt by installments or otherwise;

"(2) As wages of an employee or rent to a landlord;

"(3) As an annuity to a widow or representative of a deceased partner;

"(4) As interest on a loan, though the amount of payment vary with the profits of the business;

"(5) As the consideration for the sale of good will of a business or other property by installments or otherwise."

plaintiff's testimony, but was authorized to do so. *State* v. *DeHass* (1967), 10 Ohio St. 2d 230 [39 O.O.2d 366]. Since that testimony was not so inconsistent with the remainder of the evidence, we cannot say that the finding was against the manifest weight of the evidence or that the trial court erred in that finding.

## II

Defense counsel next contends that plaintiff is not entitled to an accounting for any partnership interest in the partnership property, as George's spouse and heir. He contends that all partnership property vested in Clarence upon George's death, relying on R.C. 1775.24:

"(A) A partner is co-owner with his partners of specific partnership property holding as a tenant in partnership.

"(B) The incidents of this tenancy are such that:

"* * *

"(4) On the death of a partner, his right in specific partnership property vests in the surviving partners, unless he was the last surviving partner, in which case his right in the property vests in his legal representative. The surviving partners have, or the legal representative of the last surviving partner has, no right to possess the partnership property for any but a partnership purpose. *This division is subject to the procedures set forth in sec-* tions 1779.01 to 1779.08 of the Revised Code.

"(5) A partner's right in specific partnership property is not subject to dower, statutory interest of a surviving spouse, heirs, or next of kin, or allowance to a surviving spouse or minor children." (Emphasis added.)

R.C. 1779.01 to 1779.08 provide for the purchase by surviving partners of a deceased partner's interest from his legal representative.[4] Under R.C. 1775.24, the rights in specific partnership property vest in the surviving partners subject to settlement by the surviving partners with the estate of the deceased partner. Further, R.C. 1775.42 expressly authorizes the legal representative of a deceased partner to obtain an accounting upon the dissolution of the partnership,[5] which occurs at that partner's death.[6] See *Peterson* v. *Teodosio* (1973), 34 Ohio St. 2d 161 [63 O.O.2d 262]. As executrix of George Simandl's estate, plaintiff possesses an interest in the partnership property and a right to an accounting by defendant as the administrator of Clarence's estate.

Defense counsel also contends no accounting should be ordered since the partnership sold beer and wine under a liquor license applied for and issued solely in the name of George Simandl, relying on *Nahas* v. *George* (1951), 156 Ohio St. 52 [45 O.O. 60], and *Williams* v. *Williams*

---

[4] See, *e.g.*, R.C. 1779.04:

"With the approval of the probate court by which the executor or administrator for the estate of a deceased partner was appointed, the surviving partners may take the interest of such deceased partner in the partnership assets, at the appraised value of such interest after the debts and liabilities of the partnership are deducted from such partnership assets, upon giving to the executor or administrator their promissory notes, with good and approved security, in payment for the interest of the deceased partner in the partnership assets. Such notes shall be payable with interest, in not more than nine months from the time the surviving partners elect to take such assets.

Such election must be made within thirty days from the date of the approval of the inventory and appraisement by such court."

[5] R.C. 1775.42 provides:

"The right to an account of his interest shall accrue to any partner, or his legal representative, as against the winding up partners, the surviving partners, or the person or partnership continuing the business, at the date of dissolution, in the absence of any agreement to the contrary."

[6] R.C. 1775.30 provides in part:

"Dissolution is caused:

"* * *

"(D) By the death of any partner;"

(1953), 95 Ohio App. 533 [54 O.O. 139]. The court in *Williams,* following *Nahas,* stated in the syllabus as follows:

"1. It is unlawful for a partnership to carry on the business of selling beer and intoxicating liquor under a permit applied for by one of the partners and issued in his name alone.

"2. Courts will not recognize a partnership which operates illegally and will not grant relief in an action by a partner for an accounting as between the partners and for other relief."

In both *Nahas* and *Williams,* the partnerships were engaged solely in operating a restaurant and lounge, and the accountings sought were primarily for profits received through that business. By contrast, the primary business of the partnership in this case was the operation of a gasoline service station. The sale of wine and beer was merely an incidental portion of a delicatessen business which was itself incidental to the main business of operating the gas station. The accounting sought here primarily concerns real estate where the partnership business was conducted, rather than profits, if any, from the sale of intoxicating liquors. Further, the alcoholic beverage permit was issued to George, so Clarence's estate is in no position to complain that George's estate might receive half of those minimal profits. If no division of those profits is allowed, then George's estate would receive all of them. Therefore, the sale of wine and beer under a permit issued to George is not sufficient to preclude the court from ordering an accounting in this case.

### III

Finally, defendant argues that the testimony of plaintiff Albina Simandl about statements or transactions before Clarence's death was inadmissible under the Dead Man's Statute, R.C. 2317.03.

The Dead Man's Statute, which made a party incompetent to testify where the adverse party was the administrator of a decedent's estate,[7] was repealed by implication by Evid. R. 601. Section 5(B), Article IV, of the Ohio Constitution authorizes adoption of procedural rules and determines their effect on outstanding procedural statutes:

"The supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right. Proposed rules shall be filed by the court, not later than the fifteenth day of January, with the clerk of each house of the general assembly during a regular session thereof, and amendments to any such proposed rules may be so filed not later than the first day of May in that session. Such rules shall take effect on the following first day of July, unless prior to such day the general assembly adopts a concurrent resolution of disapproval. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."

Evid. R. 601 was submitted by the Supreme Court to the General Assembly, as part of the Ohio Evidence Rules. No concurrent resolution of disapproval was adopted by the General Assembly when the rules were submitted in 1980, so the Evidence Rules became effective July 1, 1980.

Evid. R. 601 directs that "[e]very person is competent to be a witness" with certain stated exceptions not applicable here. Thus, previous statutory restrictions on competence were abrogated by the adoption of Evid. R. 601 under the constitutional authority of Section 5(B), Article IV. Rules of witness competence

---

[7] R.C. 2317.03 provides in part:

"A party shall not testify when the adverse party is * * * an executor or administrator

* * *."

The statute provides for certain exceptions inapplicable to this case.

do govern "practice and procedure" in Ohio courts; they do not "abridge, enlarge, or modify any substantive right." Cf. *State* v. *Waller* (1976), 47 Ohio St. 2d 52 [1 O.O. 3d 32].

Indeed, as the Staff Note to Evid. R. 601 indicates, that rule was intended to eliminate the competence barrier created by the Dead Man's Statute:

"One of the purposes of Federal Evidence Rule 601 was to preserve statutes such as the dead man's statute in state matters in those states where such a statute existed. Ohio has chosen to eliminate the exclusion. Rule 601 supersedes R.C. 2317.03, the dead man's statute. By declaring all witnesses to be competent and not providing an exception for the exclusionary provisions of the dead man's statute, a conflict between the rule and the statute is created and the statute is superseded under constitutional provision. Concomitantly, Rule 804(B)(5) provides that the statements formerly excluded by the dead man's statute are exceptions to the hearsay rule."

See, also, *Walton* v. *Elftman* (Cuyahoga C.P. 1980), 64 Ohio Misc. 45 [18 O.O.3d 232].

Evid. R. 804(B)(5) permits introduction of hearsay statements made by a deceased person to third persons which tend to rebut the testimony of an adverse party that are now admissible under Evid R. 601 and which were formerly inadmissible under R.C. 2317.03.[8]

The Dead Man's Statute and the hearsay bar previously precluded both the testimony by a party seeking to prove a claim against a decedent and out of court statements by that decedent tending to rebut such claims, but Evid. R. 601 and 804(B)(5) now permit both. Consequently, the most relevant evidence concerning the claim against a decedent is now admissible while a safeguard against fraudulent claims is provided by Evid. R. 804(B)(5).

However, defendant's counsel contends that R.C. 2317.03 should govern this action because of the limitation on the Evidence Rules in Evid. R. 1102:

"These rules shall take effect on the first day of July, 1980. They govern all proceedings in actions brought after they take effect and also all further proceedings in actions then pending, except to the extent that in the opinion of the court their application in a particular action pending when the rules take effect would not be feasible or would work injustice, in which event former evidentiary principles apply."

This action was filed prior to the effective date of the rules, but the trial occurred after the effective date.

Defendant contends the application of Evid. R. 601 to this pending action would work injustice, but he fails to indicate how or why this injustice would occur. Nor does the record indicate any such injustice. The sole reason given by defendant is that he could produce no witness to contradict the plaintiff's testimony. Since these transactions extended over many years, defendant's inability to produce any witness to contradict plaintiff's testimony or to recite any denials made by the decedent demonstrates the weakness of his position and the wisdom of the new rules.

---

[8] Evid. R. 804 provides in part:

"(B) The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

"* * *

"(5)  The statement was made by a decedent, or a deaf-mute who is now unable to testify, or a mentally incompetent person, where (a) the estate or personal representative of the decedent's estate, or the guardian or trustee of the deaf-mute or incompetent person is a party, and (b) the statement was made before the death or the development of the deaf-mute condition or the incompetency, and (c) the statement is offered to rebut testimony by an adverse party on a matter which was within the knowledge of the decedent, deaf-mute, or incompetent person."

Application of Evid R. 601 should not be precluded simply because it permits adverse testimony not otherwise admissible, when that was the intent of the rule's authors. Rather, some injustice caused by its application under the particular circumstances of the case must be shown. The defendant has failed to show or allege any such particular injustice.

For the above reasons, defendant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

CORRIGAN, JOHN V., P.J., and CORRIGAN, DANIEL O., J., concur.

CORRIGAN, DANIEL O., J., of the Court of Common Pleas of Cuyahoga County, sitting by designation in the Eighth Appellate District.