## In re ESTATE OF NUSS.

[Cite as *In re Estate of Nuss* (1994), 97 Ohio App.3d 191.]

Court of Appeals of Ohio,
Butler County.

No. CA93–11–214.

Decided Sept. 19, 1994.

*Jack F. Grove,* for appellant, Lois Nuss.

*Sisson, Atkins, Becker & Kash, Christopher G. Atkins* and *Scott L. Martin,* for appellee Linda Nuss.

*Sisson, Atkins, Becker & Kash* and *Paul A. Becker*, for appellee estate of Stephen H. Nuss.

WILLIAM W. YOUNG, Judge.

Appellant, Lois Nuss, appeals from a final judgment of the Butler County Probate Court in which that court concluded that appellant and her late son had operated a family farm as a partnership. The court ordered the executor of the decedent's estate to appraise and divide certain property between appellant and the estate pursuant to R.C. Chapter 1779.

Stephen H. Nuss was killed in an automobile accident on July 24, 1992. His widow, Linda Nuss, was named executor of his estate. On January 28, 1993, Linda Nuss filed the estate's inventory and appraisal. Appellant, Stephen's mother, filed exceptions to the inventory on February 17, 1993, claiming ownership of certain farm equipment.[1] All the equipment at issue was located on appellant's farm at 6316 Kyles Station Road (the "Kyles Station farm").

The probate court held an evidentiary hearing on the inventory and the exceptions on April 26, 1993. On October 13, 1993, the court issued its judgment. Although neither party argued the existence of a partnership, the probate court, without explanation, concluded that Stephen and his mother were partners in the family farming operation. The court found that the property in question was co-owned by the parties as partnership assets. By the time the court concluded that the parties were partners, the estate had already auctioned many other pieces of farm equipment listed on the inventory, but not subject to objection.

On appeal, appellant assigns the following as error:

"The probate court erred in its judgment declaring that a de facto partnership owned the disputed articles of farm equipment including permanent fixtures."

---

1. The list of exceptions reads as follows:
   "19. John Deere 8630 4 × 4 tractor with cab and dual wheels
   "22. John Deere 3010 tractor with loader (bad engine)
   "35. (4) Parker gravity feed grain wagons—500 bushels each—two in very poor condition
   "37. (1) set John Deere saddle tanks with set of booms
   "43. John Deere 30' rotary hoe 3 pt. hitch
   "44. Lisston 8 row rolling cultivator (not a John Deere 6 row as per schedule)
   "45. Donahue 24' implement trailer
   "47. Super "B" batch grain dryer (part of grain leg system at # 73)
   "53. Parker gravity food grain wagon—300 bushels
   "60. Blade grader—3 pt. hitch
   "66. Two large hog feeders—wood
   "73. (3) grain storage bins including leg (elevator, motors, and accessories)"

Appellant claims that there was insufficient evidence for the lower court to conclude that the parties were partners. She also asserts that three grain storage bins listed in the inventory and used in conjunction with a grain distribution system located on her farm are permanent fixtures to her real estate.

At the hearing, the parties spent considerable time on the Nuss family's farming history. A review of this testimony is critical in determining the nature of the parties' relationship.

Appellant and her husband, Harold Nuss, had six children, including the decedent, when Harold died suddenly in 1970. Stephen and his brother, Chris, aged fifteen and twelve when their father died, were the only two children who chose or were able to continue farming with their mother.

The boys did most of the actual farming, although appellant continued to do some physical work around the farm. Appellant also drove a school bus. While the boys were minors, appellant handled all the finances. She kept a checking account for the farming operation under the name "Nuss Farm." As Stephen and Chris came of age, she added them as signatories to the Nuss Farm account.

With the exception of the grain storage bins, almost all of the equipment in question was purchased in the mid to late 1970s. During this period, appellant obtained the periodic operating loans that made most of these equipment purchases possible. Appellant introduced sales receipts listing her as the purchaser of almost all of the equipment at issue.

Eventually, Stephen and Chris began to rent and farm other tracts of land. As they were able to arrange their own financing, appellant often cosigned their obligations. She helped the boys buy a farm on LeSourdsville–West Chester Road (the "LeSourdsville farm"). Stephen later built a home on this farm and lived there with his second wife, Linda, until his death.

In 1988, Chris Nuss decided to quit farming. He signed the deed to the LeSourdsville farm over to Stephen and Stephen paid him $100,000 for his interest in their farming operations. Appellant was unaware that Chris was planning to stop farming and she was not a party to their agreement.

At the time of Stephen's death, the farming operation had changed significantly. Stephen farmed over twelve hundred acres of land, including the two hundred acres on the Kyles Station farm. He and his wife, Linda, had opened a new checking account in 1984 or 1985 under the name "Nuss Farms." Appellant was not a signatory on this account.

Stephen paid all the expenses associated with farming the Kyles Station farm, including property taxes, maintenance and repair expenses for buildings and equipment on the farm, utilities, and insurance on some of the equipment. Appellant testified that Stephen paid these expenses in place of rent. Linda

Nuss acknowledged that in exchange for the use of the land, Stephen paid all the property taxes, utilities and upkeep. She testified that appellant did not receive any funds from the sale of crops grown on her land beyond the payment of these bills.

Stephen's first wife, Judy Morris, testified at the hearing. She was married to Stephen in 1972 and much of the property in dispute predated their dissolution in 1977. The couple allocated various items of marital property pursuant to a separation agreement. However, that agreement was silent regarding any interest Stephen might have in the farming operation. The agreement also did not list any farm equipment. Morris testified that during their marriage Stephen worked for his mother. She stated that no farm equipment was listed in the separation agreement because none of it belonged to Stephen.

Chris Nuss also testified at the inventory hearing. He stated that the equipment at issue was owned by his mother, noting that she had bought most of it before he or Stephen had established credit. He claimed that his mother's property was unaffected when he sold his share in the farming operation to Stephen in 1988.

Kim Burton, formerly a loan officer with Farmers' Home Administration and Star Bank, testified for the estate. Apparently, Stephen and Linda had pledged some of the equipment at issue as collateral for certain loans. Burton testified that appellant had never been listed as a landlord on any loan applications prepared by the couple. Burton stated that she had no indication that they did not own any equipment pledged as collateral.

Appellant testified that she was not aware that Stephen and Linda had used any farm equipment located on her farm as collateral. She was also unaware that the couple had listed the Kyles Station farm as their asset on certain financial statements. Linda Nuss later acknowledged that she had not told appellant about the security interests or the financial statements because she did not consider it any of her business. On cross examination, Burton testified that if she had seen the sales receipts in appellant's name she probably would have required her consent before accepting that equipment as collateral.

The issue before this court is whether there was sufficient evidence presented at the hearing to allow the trial court to conclude that the parties operated as a partnership. "A partnership is an association of two or more persons to carry on as co-owners a business for profit." R.C. 1775.05(A). R.C. 1775.06 lists certain rules to help determine the existence of a partnership. That section states in part:

"(B) Joint tenancy, tenancy with a right of survivorship, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership

does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of property.

"(C) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.

"(D) The receipt by a person of a share of the profits of a business is prima-facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

"(1) As a debt by installments or otherwise;

"(2) As wages of an employee or rent to a landlord[.]"

■ Since every business relationship is unique, no single fact or circumstance can operate as a conclusive test for the existence of a partnership. Determining the relationship of parties in the context of a family farm is especially difficult because family members often deal with each other casually.

■ There was no written or oral partnership agreement between Stephen and his mother. There is no strong evidence that the parties intended to operate the family farm as a partnership. The parties did not pay taxes as a partnership.

Linda Nuss certainly did not consider appellant a partner. She stated that she did not believe that the farming operation's financial records were any of appellant's business.

Importantly, there is also no indication that the parties shared net profits. Both appellant and Linda testified that Stephen operated and maintained the farm, but also sold the crops and deposited the proceeds into an account that appellant did not have access to. Linda Nuss acknowledged that appellant did not receive any additional income from the sale of crops beyond payment of property taxes, utilities, and other expenditures associated with maintaining the farm.

The parties obviously shared a community of interests in the farming operation. There is no doubt that the parties shared equipment and labor. However, "such facts do not establish a partnership or joint ownership of the assets involved." *In re Estate of Hruby* (Feb. 11, 1992), Columbiana App. No. 91–C–10, unreported, at 8, 1992 WL 37804 at *3 (brothers' joint ownership of two farms where certain equipment was used on both farms did not support a finding that the brothers operated as a partnership).

The trial court, faced with the difficult problem of determining ownership of this property, attempted to reach a compromise by concluding that the parties co-owned the equipment as partners. The court, however, did not clearly explain how it reached its conclusion. After a thorough review of the record, this court

holds that there was insufficient evidence to allow the trial court to conclude that Stephen and his mother farmed as partners. Rather, the parties' conduct in operating appellant's farm suggested that they operated as licensor and licensee at the time of Stephen's death.

We now address whether the farm equipment at issue was properly listed as assets of Stephen Nuss's estate. We conclude that appellant is the owner of the equipment and that it was not properly listed as estate assets.

Both Linda Nuss and appellant claimed ownership of the property. However, appellant was listed on sales receipts as the purchaser of all the equipment at issue besides the three grain bins. All the equipment was located on her farm at the time of Stephen's death. Chris Nuss testified that he believed his mother owned this equipment. He testified that her ownership was not affected by his sale of his interest in the farming operation to Stephen. Stephen did not list any of the farm equipment as assets in his separation agreement with his first wife, Judy Morris. Morris also testified that she believed that appellant owned the farm equipment while she was married to Stephen.

Appellant did not purchase the grain storage bins. However, we agree with appellant that these bins are fixtures, and belong to appellant as owner of the real estate. Robert Johnson, a licensed real estate appraiser testified that in his opinion the grain storage system is a permanent part of the real estate and would typically be taxed as real estate. In fact, the grain storage system was listed as an improvement to the real estate on appellant's taxes. Johnson also stated that although the grain bins at issue could be removed, removal would result in a "functional loss of overall utility."

Appellant's assignment of error is sustained. The probate court's conclusion that the parties were partners was against the manifest weight of the evidence. This court concludes that all of the equipment and assets appellant listed in her exceptions were improperly included as inventory of the estate. This cause is remanded to the trial court for judgment consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

JONES, P.J., and WALSH, J., concur.