[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
This is an appeal by Rivercrest Farm, Inc. ("Appellant") from a judgment of the Court of Common Pleas of Allen County in which the court rejected a claim that Fred and Joyce Taber ("Appellees") were partners in a family hog operation and therefore liable for a debt which their son had discharged in bankruptcy. We affirm the judgment of the trial court.
In 1961 Defendants Fred and Joyce Taber acquired a 77 acre parcel of farmland in Harrod, Ohio, and commenced certain agricultural businesses thereon. Specifically, over the years Appellees have been heavily involved in both grain and hog operations. It is undisputed that at all times the grain operation was a business exclusive to Appellees. It is also undisputed that at all times Appellees have been the record owners of a total of five buildings located on the farm that are dedicated to the hog operation. In addition, Fred and Joyce Taber have owned virtually all of the equipment used in the hog operation.
In the early 1980's Appellees formed a hog partnership with their son, Michael Taber, and his wife Linda Taber. The partnership was created through a written agreement which stated that all profits were to be divided equally between the couples. Sometime in the mid-1980's the parties decided to dissolve the partnership due to financial hardships.
Michael and Linda Taber then bought Appellees' interest in the partnership in order to conduct the hog operation on their own. As a result, Michael and Linda Taber formed a partnership with each other which was referred to as M L Farms. It is undisputed that Appellees had nothing to do with the hog operation at that point, except for the fact that they allowed their son and daughter-in-law to conduct the business on the farm while using the equipment and facilities rent-free.
However, in 1991 Fred and Joyce Taber decided to resume an active participation in the hog business. Appellees acquired a number of hogs and by 1992 Fred and Joyce Taber owned approximately one-third of the total number of hogs on the farm; M L Farms owned the remaining two-thirds. (This was the basic ownership scheme at all relevant times; a more detailed description of the actual operating activities will be presented in conjunction with Appellant's specific assignments of error.)
From 1991 to 1995 Rivercrest Farm, Inc. was the primary supplier of corn for the hog operation.[1] Michael Taber established the account and the invoices were addressed to M L Farms only. Nonetheless, since Appellees' hogs consumed approximately one-third of the total amount of corn ordered, Fred and Joyce Taber would send a separate check to Rivercrest for their share of the feed. This became the payment practice as between the parties.
Thereafter, M L Farms began to experience financial difficulty and in 1996 Michael Taber filed for bankruptcy. At that time, M L Farms had a substantial balance on the Rivercrest corn account that was in excess of $30,000. On August 15, 1996, the United States Bankruptcy Court for the Northern District of Ohio discharged the entire debt.
On January 15, 1997, Appellant filed a complaint against Fred and Joyce Taber[2] claiming that their activities in the hog operation constituted a partnership with M L Farms and thus, Appellees were obligated for the discharged debt. A trial to the court proceeded in September, 1997, and the court subsequently found that a partnership in fact did not exist; the court also refused to find that a partnership by estoppel had been established.
However, the trial court did hold Appellees liable for one-third of the debt ($12,243.46 plus ten percent annum) based on a theory of agency by estoppel whereby Michael Taber acted as a purchasing agent for his parents' share of the corn ordered. It is from this judgment that Appellant has filed a timely appeal.
For its first and second assignments of error, Appellant asserts the following:
I.
 The trial court erred in that Defendants Fred Taber and Joyce Taber along with Michael Taber and Linda Taber were a Partnership [sic] pursuant to O.R.C. 1775.05(A) as they were an association of two or more persons carrying on as co-owners of a business for profit.
II.
 The trial court erred in that O.R.C. 1775.06(C) and (D) when read together do not require the sharing of net profits to establish a partnership as the sharing of gross returns together with other partnership characteristics are sufficient to establish a partnership as to the Taber family hog operation.
As the first and second assignments of error address the issue of the trial court's refusal to find a partnership in fact, both assertions will be addressed together.
At the outset, we note that an appellate court will not disturb the decision of the trial court when the judgment is supported by some competent, credible evidence. In addition, it is well established that the reviewing court must give deference to the trial court since the trial judge sits in the best position to observe witnesses and weigh credibility. Berger v. Dare
(1994), 99 Ohio App.3d 103, 106, 649 N.E.2d 1316, citing C.E.Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578; Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 461 N.E.2d 1273.
R.C. 1775.05(A) defines a partnership in fact as "an association of two or more persons to carry on as co-owners a business for profit . . ." Although there is no bright-line rule to help us determine the existence of a partnership in fact, R.C.1775.06(C) and (D) provide courts with certain guidelines. Specifically, R.C. 1775.06(C) states that "the sharing of gross returns does not of itself establish a partnership . . ." The following subsection of said statute states, in relevant part, that "[t]he receipt by a person of a share of the profits of a business is prima-facie evidence that he is a partner in the business . . ."
We agree with Appellant that the language of 1775.06(C) and (D) does not require the sharing of profits to establish a partnership and allows courts to examine other factors along with the sharing of gross returns when deciding whether a partnership in fact exists. However, for the reasons that follow we find that no such relationship existed between Appellees and M L Farms.
Initially, we must note that Appellees and M L Farms did not intend to create a partnership. Specifically, the record is void of any evidence of a written or oral agreement to form another partnership as the four Tabers had done in the early 1980's.
When Appellees decided to get back into the hog business in 1991 they acquired the animals with their own funds. By 1992, Fred and Joyce Taber owned approximately one-third of the hogs on the farm, however, M L Farms did not contribute to the purchase of any of the animals. Moreover, it is clear that M L Farms did not own any of the facilities or equipment used in the hog operation, save and except for a certain grinder mixer and manure spreader that had a collective value of approximately $950. Over the years M L Farms did not contribute to the real estate taxes or the insurance on the hog operation buildings and Michael and Linda Taber did not pay rent for the use of said buildings.
In addition, although all of the animals were housed in common areas and fed out of common troughs, both Joyce Taber and Linda Taber kept completely separate records regarding the livestock. In particular, each recorded the breeding history of their own sows to determine ownership of the resulting offspring. Further, the four Tabers instituted an ear tagging system which utilized particular symbols to identify the owner of each animal.
When the animals were ready to be sold, Michael and Fred Taber would know, via the ear tagging system, how many of their own pigs were going to market. However, for reasons not clearly stated in the record, all of the Tabers' hogs were then treated and sold as a unit once they arrived at the market. Thus, regardless of how many of their pigs were sold, Fred and Joyce Taber would receive a check for one-third of the total proceeds. M L Farms would receive a check for the remaining two-thirds.
In applying the foregoing facts to the general definition of a partnership, as set out in R.C. 1775.05(A), it is clear that the four Tabers did not collectively own any real estate, equipment or animals used to facilitate the hog operation. Appellant has simply failed to prove that the four Tabers worked as co-owners of a business, which is an essential element of a partnership in fact.
Appellant's first assignment of error is overruled.
Further, we get the same result when applying the facts to the language contained in R.C. 1775.06(C) and 1775.06(D). It should be noted that from 1991 to 1995, neither of the parties involved in the hog operation realized a profit. Hence, pursuant to R.C. 1775.06(D) there was no prima facie evidence that a partnership existed as it was impossible for the parties involved to share in any profits.
Nonetheless, we find that the four Tabers shared gross returns, within the meaning of 1775.06(C), through the one-third, two-thirds division of market proceeds, regardless of how many animals each individual sold. However, although we find that the four Tabers did share gross returns, said statute states that such action, in and of itself, does not create a partnership. In the case at bar, the record is void of any other evidence tending to show the existence of a partnership in fact. "There is no doubt that the parties shared equipment and labor. However, `such facts do not establish a partnership . . .'" In re Estate of Nuss (1994),97 Ohio App.3d 191, 196, 646 N.E.2d 504, citing In re Estate ofHruby (Feb. 11, 1992), Columbiana App. No. 91-C-10, unreported.
Appellant's second assignment of error is overruled.
For its third assignment of error Appellant asserts the following:
III.
 The Trial Court erred in that the Tabers' ownership of breeding stock, division of income, consumption of and payment for feed corn on a one-third (1/3) two-third (2/3) basis establishes a partnership by estoppel where Rivercrest Farm, Inc. relied to its detriment upon the apparent partnership believing it was dealing with all four of the Tabers as partners.
In order to create a partnership by estoppel, three basic requirements must be met:
 (1) a person represents himself as a partner or consents to another representing him as a partner; (2) a person * * * to whom such representation has been made relies on this representation; and (3) based on this reliance, the claimant gives credit to the apparent partnership.
 Fiberized Prod., Inc. v. Crocker (April 15, 1993), Franklin App. No. 92AP-975, unreported.
We find that the record establishes that there was competent, credible evidence for the trial court to determine that partnership by estoppel does not apply. Specifically, Fred and Joyce Taber never represented themselves as partners of M L Farms, nor did they ever consent to Michael and Linda Taber making such a representation. The absence of said representation is illustrated by the fact that Fred and Joyce Taber always wrote separate checks from their personal account to pay for the one-third portion of the feed. Likewise, M L Farms paid with checks from Mike and Linda Taber's partnership account.
Instead of relying on a clear representation that a partnership had been created, Appellant's general manager, Mr. Greg Kruger, relied on the fact that he saw everyone working with the hogs on the occasions when he delivered the corn. He also relied heavily on a sign placed on Appellee's property which read "Taber and Taber/Pork Producers". The record establishes that the sign was meant to indicate Fred and Joyce Taber rather than the older and younger generations of Tabers. Mr. Kruger merely assumed that the family had formed a partnership.
Since we have concluded that the first prong of the above mentioned test has not been satisfied, it is unnecessary to proceed with a discussion on the second and third prongs.
Appellant's third assignment of error is overruled.
For its fourth assignment of error Appellant asserts the following:
IV.
 The Trial Court erred in that Fred and Joyce Taber are jointly and severally liable as partners pursuant to Ohio Revised Code 1775.14(A)(1) for the wrongful act of partner Mike Taber pursuant to Ohio Revised Code 1775.12 and the breach of trust by partner Michael Taber pursuant to Ohio Revised Code Section 1775.13.
Due to our conclusion that the four Tabers did not establish a partnership, Appellant's fourth assignment of error is hereby rendered moot.
For its fifth assignment of error Appellant asserts the following:
V.
 The Trial Court erred in that the partnership is required to be wound up and partnership creditors paid upon dissolution pursuant to Ohio Revised Code Sections [sic] 1775.29 and 1775.39 or Rivercrest Farm, Inc. continues to be the creditor of Fred and Joyce Taber as the persons continuing the partnership business pursuant to Ohio Revised Code Section 1775.40.
Due to our conclusion that the four Tabers did not establish a partnership, Appellant's fifth assignment of error is hereby rendered moot.
For its sixth assignment of error Appellant asserts the following:
VI.
 The Trial Court erred in that Michael Taber as the apparent agent for the Defendants, Fred Taber and Joyce Taber, binds them to the same extent and in the same manner as though they were partners in fact pursuant to Ohio Revised Code Section 1775.15.
R.C. 1775.15(A) states, in pertinent part:
 [W]hen a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to anyone, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership . . .
Contrary to the argument presented in Appellant's brief, Michael Taber did not hold his parents out as partners of M L Farms. Indeed, Michael Taber set up the corn account himself, he handled all necessary negotiations with Mr. Kruger and the bills were addressed to M L Farms only. The record shows that Michael Taber merely represented to Mr. Kruger that he would ask his parents for help as the bills began to mount. There was no assertion by anyone that Appellees were partners of Michael and Linda Taber. In fact, until it became obvious that M L Farms was having financial difficulty, Mr. Kruger did not expect anything more from Fred and Joyce Taber than the usual payment for approximately one-third of the corn.
Appellant's sixth assignment of error is overruled.
For its seventh assignment of error Appellant asserts the following:
VII.
 The Trial Court erred in that even if Michael and Linda Taber were doing business as "M L Farms", a formal partnership and separate legal entity, it is a "person" pursuant to Ohio Revised Code Sections [sic] 1775.01(C) and as such M L Farms Partnership is a partner of Fred and Joyce Taber with regard to the Taber Hog operation.
Due to our conclusion that the four Tabers did not establish a partnership, Appellant's seventh assignment of error is hereby rendered moot.
We therefore agree with the judgment of the trial court as it relates to the assignments of error Appellant has presented for our review. We also agree with the trial court's conclusion that Appellant's reliance on the one-third payment from Appellees created an agency by estoppel situation rather than a partnership by estoppel.
 Agency by estoppel is grounded on the notion that where the principal clothes the agent with the appearance of authority or knowingly permits the agent to act as though he had such authority, the principal should be bound by acts within the agent's apparent authority upon which third persons rely in good faith.
 Blackwell v. Internatl. Union, United Auto Workers (1983),9 Ohio App.3d 179, 182, 458 N.E.2d 1272.
In the case at bar, Appellees were fully aware that when Michael Taber ordered corn for M L Farms he would also order a share for Appellees' animals. Mr. Kruger reasonably relied on Michael Taber's apparent authority to do so on behalf of his parents, especially since Rivercrest Farms, Inc. regularly received separate checks from Fred and Joyce Taber for one-third of the total corn delivery. Appellees should therefore be bound by their consent to Michael Taber's actions.
Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 SHAW, P.J., and HADLEY, J., concur.
[1] Rivercrest Farm, Inc. first supplied corn to the hog operation in 1989 when it began to sell small quantities of corn to M L Farms. Appellant did not become the primary supplier of corn until 1991, the same time that Appellees got back into the hog business.
[2] Agricultural Credit Association of Kenton, Ohio, (Ag-Credit) was also named as a Defendant due to its security interest in all of Rivercrest's growing and stored crops. On August 26, 1997, all parties filed a Consent Judgment Entry stating that Ag Credit held the first and best lien as to the proceeds, if any, recovered from Defendants Fred and Joyce Taber.