OPINION
{¶ 1} Appellant, Evonne Hanna ("Hanna"), appeals the judgment entered by the Portage County Court of Common Pleas, Probate Division. The court entered judgment in favor of appellees, Kyan Kraus, Executor of the Estate of Keith H. Kraus, and Keith E. Kraus, Administrator of the Estate of Keith H. Kraus ("the estate").
 {¶ 2} Hanna met Keith H. Kraus ("Keith Kraus") in the late 1980s or early 1990s. They had a romantic relationship for several years. In the mid-1990s, Hanna moved to the Sandusky, Ohio area and was married to another individual. Around 1997, Hanna was divorced from this individual. Soon after, she moved into Keith Kraus' house in Portage County. By all accounts, the two shared a very loving, romantic relationship.
 {¶ 3} Keith Kraus was a school teacher. In addition, he developed a successful rental property business to subsidize his income. The business consisted of approximately seventeen rental properties in the Kent, Ohio area. Many of these properties were rented to Kent State University students.
 {¶ 4} In August 2000, Keith Kraus passed away unexpectedly. His son, Keith Eric Kraus, was named administrator of the estate. Subsequently, Keith Kraus' will was found. The will requested that Kyan Kraus, Keith Kraus' brother, be appointed executor of the estate. Thereafter, the court named Kyan Kraus and Keith Eric Krause co-fiduciaries of the estate, with Keith Eric Kraus remaining as administrator, and Kyan Kraus being appointed executor.
 {¶ 5} On March 23, 2001, Hanna filed a creditor's claim against the estate seeking over one million dollars. In a letter delivered April 16, 2001, the estate rejected this claim. However, on May 4, 2001, shortly after rejecting the claim, the estate filed the instant action for declaratory judgment in the Portage County Court of Common Pleas, Probate Division. Essentially, the estate asked the court to declare that Hanna had no interest in the assets of the estate.
 {¶ 6} Hanna filed a counter-claim, asserting she was entitled to be compensated by the estate. She argued that a partnership existed between herself and Keith Kraus. She sought recovery on the grounds of unjust enrichment and that a de facto partnership existed.
 {¶ 7} The matter proceeded before a magistrate. A four-day hearing was held. The estate presented a set of stipulations, which included: (1) Keith Kraus had title to all his rental properties and his residence, (2) all loan material relating to these rental properties and his residence was in the name of Keith Kraus only, (3) all negotiations related to these properties were conducted by Keith Kraus, (4) all checking accounts related to the rental properties were solely in the name of Keith Kraus, (5) all tax returns related to the rental properties were filed solely in the name of Keith Kraus, (6) Keith Krause never used Hanna's name in connection with his business, (7) all debts and expenses related to the rental properties were in Keith Kraus' name, (8) there was never a written partnership agreement between Keith Kraus and Hanna, (9) Keith Kraus and Hanna were never married, (10) Keith Kraus solely negotiated, and signed, for all the rental properties and his residence, (11) Hanna owns a rental property in Kent solely in her name, (12) Hanna never shared in the profits or losses of the rental business for tax purposes, (13) Hanna never received a distribution of profits or losses from the business, and (14) no partnership agreement was ever filed. Following the presentation of the stipulations, the estate rested without calling any witnesses.
 {¶ 8} Hanna testified on her own behalf. She introduced hundreds of exhibits during her testimony. The vast majority of the exhibits were cancelled checks from her personal checking account, or receipts, for various items. She claimed that all of these expenses were business expenses of the alleged partnership. Many of the alleged business expenses were merely receipts for everyday items that Hanna attempted to classify as business expenses. These included: "Fruit Loops," feminine products, automobile repairs for her personal vehicle, dry cleaning, cookbooks for her daughter, record club and health club memberships, flowers for her father's funeral, and wedding gifts. Regarding the receipts from companies that could have been business related, she was unable to testify as to what was purchased for what rental property. For instance, she labeled many items as "business materials," rather than identifying what was purchased and linking it to a specific rental property owned by Keith Kraus.
 {¶ 9} In addition to the receipts, Hanna testified that she often helped Keith Kraus with the upkeep of his rental properties. She would help him remove trash from the properties. She would also help with the painting and cleaning after tenants vacated the property.
 {¶ 10} Following Hanna's testimony, Kyan Kraus testified for the estate. He acknowledged that Hanna helped Keith Kraus with the upkeep of the properties. In addition, he testified that he was Hanna's tax preparer, and she never claimed any of the above items as business expenses on her income tax forms.
 {¶ 11} Following the hearing, the magistrate ruled that a de facto partnership did not exist and that the estate was not unjustly enriched by the efforts of Hanna. Hanna filed objections to the magistrate's decision.
 {¶ 12} After the objections were filed, Hanna retained new counsel. The day before the scheduled hearing on the objections to the magistrate's decision, Hanna's new counsel filed supplemental objections to the magistrate's decision. These objections included an assertion that the probate court did not have jurisdiction to hear the action. In addition, Hanna claimed the estate did not completely and unequivocally reject her creditor's claim.
 {¶ 13} The trial court found that (1) it had jurisdiction to hear the case, (2) the estate properly rejected Hanna's creditor's claim, and (3) there was no competent, credible evidence presented to support Hanna's claims for unjust enrichment or that a de facto partnership existed.
 {¶ 14} Hanna raises four assignments of error on appeal. Her first assignment of error is:
 {¶ 15} "The trial court erred in holding that it had jurisdiction to hear [the estate's] complaint for declaratory judgment and issue a declaratory judgment on the validity of Evonne Hanna's creditor's claim."
 {¶ 16} The Supreme Court of Ohio has held, "[t]he probate court is a court of limited jurisdiction. The court has only that jurisdiction which is granted by statute and by Constitution."[1] In addition, the court held, "a probate court does not have jurisdiction to render a declaratory judgment as to the validity or enforceability of a contract providing for a division of the testator's estate different from that provided in the will. Such contacts are not directly related to the administration of the testator's estate."[2]
 {¶ 17} Initially, we will determine whether the trial court had jurisdiction to consider the declaratory judgment action filed by the estate.
 {¶ 18} "A probate court lacks subject matter jurisdiction to enter an order adjudicating a claim against an estate where that claim has been rejected by the estate. The only remedy for the claimant in such a case is an action in a court of general jurisdiction."[3]
 {¶ 19} Hanna filed a creditor's claim pursuant to R.C.2117.06. As discussed in our analysis of Hanna's second assignment of error, infra, the parties agreed that the estate rejected Hanna's creditor's claim pursuant to R.C. 2117.11. Therefore, Hanna's sole remedy was to commence an action on the claim pursuant to R.C. 2117.12. This section does not specify which court such an action is to be filed, however, a review of case law indicates this action is to be filed in the general division of the court of common pleas. The Fifth Appellate District has held, "[a]lthough R.C. 2117.12 does not specifically direct a rejected claimant to the common pleas court, case law * * * leads us to that conclusion."[4] Similarly, the Ninth Appellate District has held, "[a]lthough R.C. 2117.12 does not expressly state in which court an action a rejected claim must be brought, the case law in Ohio clearly holds that such action is a civil action properly brought in a court of general jurisdiction, not in the probate division."[5]
 {¶ 20} We note that R.C. 2117.12 has recently been amended by the Ohio Legislature. Am.Sub.H.B. No. 51 made certain changes effective April 8, 2004. However, the Legislature did not make any changes that specified in which court such actions were to be filed. Presumably, had the Legislature been dissatisfied with the numerous interpretations of the statute holding that the action must be commenced in the general division of the court of common pleas, part of the amendment would have specified in which court the action was to be commenced. This was not done. Therefore, by implication, the Legislature has ratified the case law holding that such actions be brought in the general division of the court of common pleas.
 {¶ 21} The trial court found that it had jurisdiction pursuant to R.C. 2101.24(A)(1)(l). For the following reasons, we disagree. R.C. 2101.24(A)(1)(l) reads:
 {¶ 22} "Except as otherwise provided by law, the probate court has exclusive jurisdiction:
 {¶ 23} "* * *
 {¶ 24} "(l) To render declaratory judgments, including, but not limited to, those rendered pursuant to section 2907.084 of the Revised Code."
 {¶ 25} R.C. 2907.084 is irrelevant for purposes of this case, as it concerns declarations of validity of wills and the revocation or modification of wills.
 {¶ 26} The court in Mainline Constr. Co. v. Warren
thoroughly addressed the implications of a probate court's power to render declaratory judgments in a case like this. The court tracked the legislative history of the probate code. The code used to contain the language "`in matters within its jurisdiction.'"[6] Although this specific language is no longer part of the code, the court reasoned that jurisdictional requirement still remains sound law, as "`it is obvious that a court must have jurisdiction of the subject matter in any action, before it may render judgment.'"[7]
 {¶ 27} The estate argues that the probate court was permitted to hear the instant matter pursuant to its plenary power, as set forth in R.C. 2101.24(C), which states:
 {¶ 28} "The probate court has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code."
 {¶ 29} However the court in Mainline Constr. Co. v. Warren
also addressed this argument, holding "in an action on a rejected claim, the Probate Court has no jurisdiction; hence, it has no plenary power * * *."
 {¶ 30} The probate court did not have jurisdiction to consider the merits of a rejected creditor's claim. Moreover, the Revised Code sections pertaining to declaratory judgment actions do not vest the probate court with jurisdiction. Rather, these sections are only applicable if the probate court already has jurisdiction over the subject matter.
 {¶ 31} The estate contends that the probate court had jurisdiction to consider this matter because it asked the court to determine the rights and title to estate assets that would affect the administration of the estate. We disagree. By definition, any creditor's claim has the potential to affect the rights and title to estate assets.
 {¶ 32} The estate's declaratory judgment action may have been appropriately filed in probate court if Hanna's creditor's claim had not been rejected. As Hanna notes, the estate could have filed an action in the probate court prior to rejecting her creditor's claim. R.C. 2107.46 permits a fiduciary of the estate to "ask the direction or judgment of the court" in matters regarding the rights and responsibilities of the parties involved. This situation occurred in Hawkes Hosp. of Mt. Carmelv. Colley, when the executor of the estate sought guidance from the probate court on the merits of a creditor's claim.[8]
In June, the executor sent a letter informing the creditor that the claim had been rejected, but the matter was set for a hearing in probate court. In July, after the hearing, the executor sent another letter and journal entry indicating the claim had been rejected. In response to the rejection, the creditor filed a claim in common pleas court within two months of the July letter, but more than two months after the June letter. The Supreme Court of Ohio held that the initial letter was not a plain and unequivocal rejection, and the letter and judgment entry sent in July was the rejection for purposes of triggering the two-month statute of limitations set forth in R.C. 2117.12.[9]
 {¶ 33} In the case sub judice, the complaint set forth the relevant procedural facts of the case. The complaint revealed that Hanna filed a creditor's claim and that the claim had been rejected. The estate filed the declaratory judgment action to affirm its rejection of the claim. The estate now argues that the action was merely for the probate court to determine the rights and responsibilities of the parties. However, the claim had been rejected, so the time for this had passed, and the probate court lacked jurisdiction over the matter. "[I]f the Probate Court lacks jurisdiction over a particular subject matter, such as an action on a rejected claim, it cannot assert such jurisdiction backhandedly through the device of a declaratory judgment."[10]
 {¶ 34} The majority of case law on this issue holds that a claimant cannot object to a rejection of a creditor's claim in probate court. In the case sub judice, a rather unique situation occurred, in that the estate sought a declaratory judgment from the probate court regarding the validity of Hanna's claim, after rejecting the claim in full. However, the fact that the instant action was commenced by the estate rather than the claimant is irrelevant.[11] To hold otherwise would be patently unfair, as it would allow the estate to "forum shop," as the estate could choose the jurisdiction of the probate division if it anticipated the results from that court would be more favorable.
 {¶ 35} Finally, we note that Hanna did not immediately object to the probate court's jurisdiction. In fact, she filed a counter-claim and presented a substantial amount of evidence at the hearing before the magistrate. "However, it is settled law that subject matter jurisdiction cannot be conferred on a court by consent of the parties, nor can it be waived."[12]
 {¶ 36} In addition to the probate court lacking jurisdiction over the initial declaratory judgment action, the probate court lacked jurisdiction to hear the counter-claim filed by Hanna. In its judgment entry, the trial court noted that it was not reviewing the amount of money claimed, but the legal relationship of the parties. However, the counter-claim filed by Hanna sought "an appropriate equity share of the estate." In addition, at the hearing on the objections to the magistrate's decision, the trial court observed that Hanna was seeking over a million dollars in damages. Hanna was seeking significant damages on her claims of unjust enrichment and de facto partnership. These claims fell outside the subject matter jurisdiction of the probate court.
 {¶ 37} "A claim for unjust enrichment arises out of contract in law, or quasi-contract."[13] Hanna sought to be compensated for her labor and reimbursed for expenses she contributed to the estate. Simply stated, these are quasi-contract principals.
 {¶ 38} "`One who has furnished materials or labor may recover the reasonable value of the materials or services. The promise to pay such reasonable value is implied. This is not in reliance upon the contract or by way of enforcement of the contract. It is the enforcement of an equitable right through the fiction called quasi contract. Though equitable in nature and origin, the right may be enforced at law.'"[14]
 {¶ 39} Since Hanna's counter-claim for unjust enrichment arose out of quasi-contract principals, the probate court lacked jurisdiction to hear the claim pursuant to the Supreme Court of Ohio's holding in Zuendel v. Zuendel.[15]
 {¶ 40} Hanna's second cause of action in her counter-claim was that a de facto partnership existed between herself and Keith Kraus.
 {¶ 41} In Ohio, a partnership is defined as "an association of two or more persons to carry on as co-owners of a business for profit * * *."[16] A person may not become a member of a partnership without the consent of all partners.[17] Thus, a partnership inherently requires an agreement, or contract, among the partners.
 {¶ 42} We recognize that a factually similar case was decided by the Twelfth Appellate District.[18] An individual claimed there was a partnership between herself and her deceased son to operate a family farm. The matter was heard by the probate court. On appeal, the Twelfth District did not address the probate court's jurisdiction and held there was insufficient evidence of a partnership.[19] Despite the Nuss holding, we believe Zuendel v. Zuendel governs situations like this. A partnership requires a contract between its members. Pursuant toZuendel v. Zuendel, a probate court does not have jurisdiction to consider the validity or enforceability of a contract when it would provide for a division of assets that differs from the decedent's will.[20]
 {¶ 43} The probate court erred in determining it had jurisdiction to hear this matter. Since the declaratory judgment action was a review of a creditor's claim, the probate court did not have jurisdiction to hear this matter. Likewise, Hanna's counter-claim did not vest the probate court with jurisdiction. Accordingly, the court's judgment is void ab initio.[21]
 {¶ 44} Hanna's first assignment of error has merit.
 {¶ 45} Hanna's second assignment of error is:
 {¶ 46} "The probate court erred in finding that the estate rejected Hanna's claim because there was no plain and unequivocal rejection of Hanna's claim by the estate."
 {¶ 47} Hanna claims there was no valid rejection of her creditor's claim, because the estate rejected her claim, but then filed the declaratory judgment action. She asserts the rejection was not unequivocal, because the declaratory judgment action had the effect of the estate claiming it thought the creditor's claim lacked merit, but it was not sure, so it asked the court for a ruling.
 {¶ 48} Although the rejection letter was referenced at the hearing on the objections to the magistrate's decision, the record is devoid of a copy of this letter. However, there is a reason for this. Paragraph nine of the complaint for declaratory judgment alleged that "[b]y certified letter delivered April 16, 2001, Plaintiffs rejected Defendant's claim in full." Hanna filed her answer on June 6, 2001. In her answer, Hanna admitted "the allegations contained in the ninth paragraph of the complaint." As this fact was admitted in the answer, the estate did not need to further prove it, because an admission is the equivalent of satisfying the plaintiff's burden of proof.[22]
 {¶ 49} Hanna admitted there was a full rejection. She did so a month after the declaratory judgment action was filed. Therefore, her argument that the declaratory judgment action in some way retracted the rejection is unpersuasive.
 {¶ 50} Hanna's second assignment of error is without merit.
 {¶ 51} Hanna's third and fourth assignments of error are:
 {¶ 52} "[3.] The probate court's holding that no credible evidence was presented to support a claim of unjust enrichment is against the manifest weight and sufficiency of the evidence.
 {¶ 53} "[4.] The probate court's holding that no credible evidence was presented to support a claim of de facto partnership is against the manifest weight and sufficiency of the evidence."
 {¶ 54} The trial court did not have jurisdiction to consider these claims. Therefore, the trial court's judgment is void ab initio.[23] Accordingly, Hanna's third and fourth assignments of error are moot.
 {¶ 55} The judgment of the trial court is reversed. This matter is remanded to the trial court, and the trial court is instructed to dismiss this matter in a manner consistent with this opinion.
Grendell, J., Rice, J., concur in judgment only with Concurring Opinions.
[1] Zuendel v. Zuendel (1992), 63 Ohio St.3d 733, 735, citingCorron v. Corron (1988), 40 Ohio St.3d 75.
[2] Id. at syllabus.
[3] In re Estate of Vitelli (1996), 110 Ohio App.3d 181,183-184, citing 33 Ohio Jurisprudence 3d (1982 and 1995 Supp.), Decedents' Estates, Section 1574; State ex rel. Fulton v.Coburn (1938), 133 Ohio St. 192; In re Estate of Buchanan
(1948), 82 Ohio App. 240, 242; ("The Probate Court is without authority to determine the merits of a claim that has been rejected by a fiduciary in compliance with the present statutes."); Schroyer v. Hopwood (1940), 65 Ohio App. 443;Jones v. Green (1901), 11 Ohio C.D. 548, 21 Ohio C.C. 96; Inre Estate of Taylor (1970), 23 Ohio Misc. 142, 143; ("The adjudication of a creditor's claim which has been rejected is not within the jurisdiction of the Probate Court but must be litigated in a court of general jurisdiction which has power to render a money judgment."); In re Estate of Smith (P.C. 1952), 67 Ohio Law Abs. 409; and Flax v. Oppenheimer (C.P. 1938), 27 Ohio Law Abs. 17, 12 O.O. 48.
[4] In re Estate of Long (June 1, 1992), 5th Dist. No. CA-8767, 1992 WL 127145, at *3, citing Mainline Constr. Co. v.Warren (1967), 11 Misc. 233, 235; Schucker v. Metcalf (1986),22 Ohio St.3d 33; and Alexander v. Compton (1978),57 Ohio App.2d 89.
[5] Palmentera v. Marino (Mar. 27, 1996), 9th Dist. No. 17430, 1996 WL 137424, at *2, citing In re Grant (1978),56 Ohio App.2d 207, 212; Schroyer v. Hopwood, supra; Pfeiffer v.Sheffield (1940), 64 Ohio App. 1, 4; Jones v. Green, supra;In re Estate of Taylor, supra; Mainline Constr. Co. v.Warren, supra, at 235; In re Estate of Long, supra; State exrel. Fulton v. Coburn, supra; and In re Estate of Buchanan,
supra.
[6] Mainline Const. Co. v. Warren, 11 Misc. at 237.
[7] Id. quoting Harper, Declaratory Judgments in Ohio: A Case Study (1959), 28 U.Cin.L.Rev. 33, at p. 55, note 82.
[8] Hawkes Hosp. of Mt. Carmel v. Colley (1982),2 Ohio St.3d 40.
[9] Id.
[10] Mainline Constr. Co. v. Warren, 11 Misc. at 238.
[11] See, e.g., In re Estate of Harmon (Dec. 14, 1994), 4th Dist. No. 94 CA 6, 1994 WL 720293, at *2.
[12] In re Estate of Vitelli, 110 Ohio App.3d at 184, citingState v. Wilson (1995), 73 Ohio St.3d 40, 46.
[13] Landskroner v. Landskroner, 154 Ohio App.3d 471,2003-Ohio-4945, at ¶ 47, citing Hummel v. Hummel (1938),133 Ohio St. 520, 525.
[14] Id. at ¶ 48, quoting Hughes v. Oberholtzer (1954),162 Ohio St. 330, 335.
[15] Zuendel v. Zuendel, supra, at syllabus.
[16] R.C. 1775.05(A).
[17] (Citations omitted.) Frangos v. Chavez (Jan. 30, 1997), 8th Dist. No. 69992, 1997 Ohio App. LEXIS 319, at *12.
[18] In re Estate of Nuss (1994), 97 Ohio App.3d 191.
[19] Id.
[20] Zuendel v. Zuendel, supra, at syllabus.
[21] In re Estate of Vitelli, 110 Ohio App.3d at 184.
[22] (Citations omitted). See Richards v. Broadview Hts.Harborside Healthcare, 150 Ohio App.3d 537, 2002-Ohio-6491, ¶16, fn. 1.
[23] In re Estate of Vitelli, supra.