**In re ESTATE OF IVANCHAK.**

[Cite as *In re Estate of Ivanchak*, 169 Ohio App.3d 140, 2006-Ohio-5175.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2005–T–0094.

Decided Sept. 29, 2006.

Stuart A. Strasfeld, for appellant John E. Fowler II.

W. Dallas Woodall and Lynn B. Griffith III, for appellee Terry F. Ivanchak.

WILLIAM M. O'NEILL, Judge.

{¶ 1} Appellant, John E. Fowler II, appeals the judgment of the Trumbull County Court of Common Pleas, Probate Division, determining that the law firm of Ivanchak & Fowler was not intended to be a partnership. For the following reasons, we affirm the decision of the court below.

{¶ 2} On May 20, 2002, attorney Theodore T. Ivanchak died intestate. On October 28, 2002, Theodore's son, Terry F. Ivanchak, was appointed administrator of Theodore's estate. Terry filed an inventory for the estate, identifying its assets as consisting of a 100 percent interest in the tangible personal property used by the law firm of Ivanchak & Fowler, with an estimated value of $3,000, and a 60 percent interest in the intangible personal property of the law firm of Ivanchak & Fowler, with an unknown value. The Ivanchak estate subsequently reported receipts in the amount of $56,323.49 from the settlement of personal-injury cases pending at the time of Theodore's death.

{¶ 3} On May 20, 2003, Terry filed a motion to compel accounting by a surviving partner, pursuant to R.C. 1775.42, and an application for appointment of appraisers of partnership property. On October 14, 2003, by agreed judgment entry, attorney Charles E. Wern Jr. and accountant Kenneth F. Smaltz were appointed to review pending files and to determine the assets and liabilities of the law firm of Ivanchak & Fowler.

{¶ 4} On May 25, 2005, a hearing was held regarding the cases in which the distribution of fees was disputed, Terry's motion to compel an accounting, and other matters. Terry and Fowler offered consistent testimony on the following matters. Initially, a law firm known as Ivanchak & Ivanchak was formed with Theodore and Terry Ivanchak as members. Fowler was a salaried employee of Ivanchak & Ivanchak, beginning in 1994. In January 1998, the law firm of Ivanchak & Ivanchak was succeeded by the new firm of Ivanchak, Ivanchak & Fowler, without any final accounting or winding up of the business of Ivanchak & Ivanchak. Under the new arrangement, Theodore, Terry, and Fowler received "weekly pay plus profits." Theodore and Terry each received $1,000 a week plus 40 percent of the net profits. Fowler received either $900 (according to Terry) or $750 (according to Fowler) a week plus 20 percent of the net profits.

{¶ 5} The Ivanchak, Ivanchak & Fowler firm maintained two checking accounts, a general commercial account and a payroll account. The accounts were kept in the names of all the members, and all the members could draw on the commercial account as needed. Expenses, whether for individual cases or for office overhead, and profits were shared among the members according to the fixed formula of 40 percent to Theodore, 40 percent to Terry, and 20 percent to Fowler.

{¶ 6} There was no written partnership agreement for Ivanchak, Ivanchak & Fowler. Ken Smaltz was its accountant. Smaltz was given all the firm's checks, receipts, and accounts receivable and was responsible for apportioning expenses and profits. Smaltz also prepared individual tax returns for each of the members reporting their respective share of expenses and profits from the firm's business.

{¶ 7} In January 2000, Terry left the firm to become a Warren Municipal Court judge. As a result, the Ivanchak, Ivanchak & Fowler firm was succeeded by Ivanchak & Fowler, with a revised profit-and-expense-distribution arrangement, and, again, without a final accounting or winding up of the business of Ivanchak, Ivanchak & Fowler. Under the new arrangement, Theodore's weekly draw remained $1,000, but his share in the firm's expenses and profits increased to 60 percent. Fowler received a $900 weekly draw, later increased to $1,000, and a 40 percent share of the firm's expenses and profits. Otherwise, Ivanchak & Fowler continued to operate in the same manner as Ivanchak, Ivanchak & Fowler.

{¶ 8} Neither Terry nor Fowler made any capital contributions to the firm of Ivanchak, Ivanchak & Fowler when they became members. Both Terry and Fowler testified that when each of them joined the firm, the accounts and letterhead were changed to reflect the changes in the firm name. Terry and Fowler contributed to the maintenance of the firm's office space and purchase of new equipment in proportion to their entitlement to the firm's profits. Both Terry and Fowler agreed that fees were divided on a percentage basis, rather than according to the time spent on a particular case.

{¶ 9} Terry and Fowler's testimony differed markedly in the following respects. Terry testified that upon Fowler's joining the firm, Theodore gave Fowler a list of pending, contingency-fee cases that would not be subject to the new arrangement whereby Fowler was to receive 20 percent of the fees earned. Terry testified that Fowler agreed that these cases would be excepted from the new, fee-sharing arrangement. Fowler testified that there was no such agreement and no mention of any cases being excepted from the new arrangement. Terry also testified that fees were shared according to the fee-sharing arrangement in effect on the date the case was taken in by the firm. By contrast,

Fowler testified that it was the date of settlement that determined the division of fees.

{¶ 10} Also on May 25, 2005, the parties entered into stipulations regarding the majority of the cases at issue. In eight cases, it was stipulated that the fees would be divided as follows: the Ivanchak estate would receive 40 percent, Terry would receive 40 percent, and Fowler would receive 20 percent. In 17 other cases, it was stipulated that the fees would be divided as follows: the Ivanchak estate would receive 60 percent and Fowler would receive 40 percent. In six cases, the parties were unable to reach an agreement regarding the division of fees.

{¶ 11} On July 19, 2005, the probate court issued its judgment. The court found that "the parties did not intend to establish a partnership [of Ivanchak and Fowler] and there are no partnership assets to appraise for inclusion in the estate's inventory." Accordingly, Terry's motion to compel an accounting was denied. The court further accepted the parties' stipulations.

{¶ 12} Fowler timely appeals and raises the following assignments of error:

{¶ 13} "[1.] The trial court erred in finding that the partnership of Ivanchak & Fowler did not exist.

{¶ 14} "[2.] The trial court erred to the prejudice of John W. Fowler, II by failing to properly account for the partnership assets.

{¶ 15} "[3.] The trial court erred in considering the 'testimony' of Kenneth F. Smaltz, CPA, and Charles E. Wern, Jr., Esq."

{¶ 16} In the first assignment of error, Fowler argues that the probate court's finding that the parties did not intend to create a partnership of Ivanchak & Fowler during Theodore's lifetime is against the manifest weight of the evidence.

■ {¶ 17} The definition of a partnership under Ohio law is "an association of two or more persons to carry on as co-owners [of] a business for profit." [1] Essential to the formation of a partnership is a contract or an agreement to be bound by such an association.[2] Therefore, there must be a manifestation of the intent to be bound and a meeting of the minds as to the essential terms of the association.[3]

---

1. R.C. 1775.05(A).

2. *Payne v. Thompson* (1886), 44 Ohio St. 192, 204, 5 N.E. 654.

3. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶ 16.

{¶ 18} The existence of a contract is generally an issue for the trier of fact to resolve.[4]  A trial court's factual findings are entitled to a presumption of correctness and will not be reversed as being against the manifest weight of the evidence if they are supported by competent, credible evidence.[5]

{¶ 19} As stated by the Fourth Appellate District:

{¶ 20} "Under this highly deferential standard of review, we do not decide whether we would have reached the same conclusion as the trial court.[6]  Rather, we must uphold the judgment if there is some evidence in the record from which the trial court could have reached its ultimate factual conclusions.[7]  We are guided by the presumption that the trial court's factual findings are correct, since the trial judge 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' [8]" [9]

{¶ 21} "Since every business relationship is unique, no single fact or circumstance can operate as a conclusive test for the existence of a partnership," particularly when the parties have dealt casually with each other.[10]

{¶ 22} "The receipt by a person of a share of the profits of a business is prima-facie evidence that he is a partner in the business." [11]  Other, nonexclusive factors a court may consider include the existence of a written or oral partnership agreement;  the joint ownership and control of property;  the ability of members to bind the business entity;  and the nature of the tax returns filed by the business entity.[12]  "A court can properly find a partnership exists from evidence

---

4.  *Durachinsky v. Drobnick*, 11th Dist. No. 2001–L–143, 2002-Ohio-7267, 2002 WL 31886785, at ¶ 39, citing *Gruenspan v. Seitz* (1997), 124 Ohio App.3d 197, 211, 705 N.E.2d 1255.

5.  *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273, citing *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

6.  *Hooten Equip. Co. v. Trimat, Inc.*, 4th Dist. No. 03CA16, 2004-Ohio-1128, 2004 WL 444134.

7.  Id.

8.  *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d at 80, 10 OBR 408, 461 N.E.2d 1273.

9.  *Piekutowski v. S. Cent. Ohio Educational Serv. Ctr. Governing Bd.*, 161 Ohio App.3d 372, 2005-Ohio-2868, 830 N.E.2d 423, at ¶ 12.

10.  *In re Estate of Nuss* (1994), 97 Ohio App.3d 191, 195, 646 N.E.2d 504;  accord *In re Needleman* (Bkrtcy.S.D.Ohio 1997), 204 B.R. 524, 527.

11.  R.C. 1775.06(D).

12.  See R.C. 1775.06(B) and (C);  R.C. 1775.08(A);  *Vrabel v. Acri* (1952), 156 Ohio St. 467, 46 O.O. 387, 103 N.E.2d 564, paragraph one of the syllabus;  *Goubeaux v. Krickenberger* (1933),

that there has been a sharing of net profits from a continuing business operated by two or more persons, where each is capable of binding the business entity." [13]

{¶ 23} The probate court's conclusion that the parties did not intend to form a partnership rests on the findings that there was no written partnership agreement, the firm did not maintain an IOLTA account, Theodore used firm funds to pay for certain personal expenses, the firm did not file partnership tax returns, and the accountant, Smaltz, did not treat the firm as a partnership. Although there is no direct evidence that Smaltz did not treat the firm as a partnership in the record, the other evidence cited by the probate court, i.e., the lack of a written partnership agreement, the failure to maintain an IOLTA account, the use of firm funds for personal expenses, and the failure to file partnership tax returns, constitutes evidence to support its ruling. Under the highly deferential standard of review with which we judge a lower court's factual determinations, we must affirm the court's conclusion that no partnership existed.

{¶ 24} The trial court's determination that no partnership was established was clearly a close call. However, once there is a finding and there is some credible evidence to support the trial court's ruling, this court has no authority to introduce its Monday-morning-quarterback skills into this particular dispute. The call has been made, and it must be respected.

{¶ 25} For the foregoing reasons, Fowler's first assignment of error is without merit.

{¶ 26} In Fowler's second assignment of error, he argues that the probate court erred by failing to account for the remaining partnership assets, i.e., the fees received in six disputed cases and the furniture and equipment possessed by the firm at the time of Theodore's death. The probate court entered no ruling regarding these assets. In light of the court's finding that "the parties did not intend to establish a partnership[,] * * * there are no partnership assets to appraise for inclusion in the estate's inventory." The court properly withheld making any ruling on the remaining partnership assets for the simple reason that there were no partnership assets.

{¶ 27} Fowler's second assignment of error is without merit.

{¶ 28} Under the third assignment of error, Fowler argues that the trial court erred by basing its decision on the "conclusion" of Smaltz and Wern that "the business entity was not a partnership." Although Smaltz and Wern were

126 Ohio St. 302, 311, 185 N.E. 201; *In re Needleman,* 204 B.R. at 527; *In re Estate of Nuss,* 97 Ohio App.3d at 195, 646 N.E.2d 504; *Berger v. Dare* (1994), 99 Ohio App.3d 103, 108–109, 649 N.E.2d 1316.

13. *Simandl v. Schimandle* (1982), 3 Ohio App.3d 357, 359–360, 3 OBR 414, 445 N.E.2d 734.

retained by agreed judgment entry to appraise the value of Ivanchak & Fowler's assets, neither testified at trial nor submitted written reports. Thus, there is no evidentiary support for the court's finding that these men concluded that Ivanchak & Fowler was not a partnership.

{¶ 29} Although the probate court erred by referring to the conclusions reached by Smaltz and Wern, this error is not dispositive of the present appeal. The probate court's determination that no partnership existed is supported by other evidence in the record, such as the lack of a written partnership agreement, the lack of an IOLTA account, Theodore's use of firm funds to pay for personal expenses, and the fact that the firm did not file partnership tax returns.

{¶ 30} Fowler's third assignment of error is without merit.

{¶ 31} For the foregoing reasons, Fowler's assignments of error are without merit. The judgment of the Trumbull County Court of Common Pleas, Probate Division, determining that the law firm of Ivanchak & Fowler was not intended to be a partnership is affirmed.

Judgment affirmed.

O'TOOLE, J., concurs.

GRENDELL, J., dissents.

DIANE V. GRENDELL, Judge, dissenting.

{¶ 32} I respectfully dissent.

{¶ 33} The issue before this court is whether the probate court correctly concluded that the business entity known as Ivanchak, Ivanchak & Fowler was not a partnership. The business entity known as Ivanchak, Ivanchak & Fowler displayed every essential attribute of partnership. The "call" in this case is not close.

{¶ 34} The undisputed testimony of every party in this case is that Theodore Ivanchak, Terry Ivanchak, and John Fowler intended to operate their law practice as a partnership. The probate court, in its judgment entry, acknowledged that "the parties stipulated that on January 1, 1998, a * * * law practice was formed known as Ivanchak, Ivanchak, & Fowler, and that the parties divided net profits as follows: 40% to Theodore T. Ivanchak, 40% to Terry F. Ivanchak, and 20% to John E. Fowler, II." [14] The evidence is undisputed that Theodore, Terry, and Fowler shared profits and losses according to fixed formulas and proportionately reported these profits and losses on their personal income tax

---

14. Neither party disputed the existence of the partnership before the probate court. Rather, the court, sua sponte, reached the conclusion that no partnership existed.

returns. The fees in 26 of the cases pending at the death of Theodore were divided by the parties, by stipulation, according to these fixed formulas representing each attorney's ownership interest in the partnership. The fees in six cases remained unresolved because the cases were settled after changes in the partnership's membership had occurred. The evidence is undisputed that Theodore, Terry, and Fowler had equal access to the partnership's financial accounts; that they could enter into contracts that were binding on the partnership; and that they represented each other's clients in court as necessary.[15]

{¶ 35} The only reasonable conclusion to be drawn from this evidence is that Theodore, Terry, and Fowler intended to and, in fact, did create and operate a partnership for the practice of law. *Simandl v. Schimandle* (1982), 3 Ohio App.3d 357, 359–360, 3 OBR 414, 445 N.E.2d 734 (a partnership exists when "there has been a sharing of net profits from a continuing business operated by two or more persons, where each is capable of binding the business entity"); accord *Brendamour v. Vamosi* (July 12, 1995), 1st Dist. Nos. C–940004 and C–940027, 1995 WL 408651; *Harvey v. Harvey* (1993), 91 Ohio App.3d 404, 411, 632 N.E.2d 956.

{¶ 36} The majority remains unconvinced by the stipulation of·the parties and unmoved by the undisputed evidence in the record. The majority professes to be exercising "deference" to the judgment of the court below. The majority protests that because "some evidence" exists to support the probate court's judgment, the judgment must be allowed to stand. I disagree. A cursory examination of this evidence relied upon demonstrates that it is neither competent nor credible.

{¶ 37} The majority states that there was no written partnership agreement. This fact is irrelevant. It is a matter of black-letter law that "[a] partnership contract is not required to be in writing." *Brewster v. Bigham*, 11th Dist. No. 2004–L–113, 2005-Ohio-6071, 2005 WL 3047491, at ¶ 16. The existence of a partnership may "be proven by showing acts and conduct of the parties from which the fact may be inferred that the parties have agreed to become partners." Id. As noted, the acts and conduct of the parties, as well as their stipulations, demonstrate the existence of the partnership.

{¶ 38} The majority states that Ivanchak, Ivanchak & Fowler did not maintain an IOLTA account. The relevance of this evidence is not apparent. There is no requirement in Ohio that law partnerships maintain IOLTA accounts. An attorney who is "affiliated with a law firm or legal professional association" has

---

**15.** In another telling stipulation entered into by the parties, the estate of Theodore Ivanchak agreed to set aside a sum of money to satisfy the deductible in a legal-malpractice case pending against Fowler.

the option of maintaining his own IOLTA account or of utilizing an IOLTA account "established and maintained by the firm or association." R.C. 4705.09(A)(2)(b). The law is indifferent whether a law partnership maintains its own IOLTA account or not.

{¶ 39} The majority states that Theodore used firm funds to pay for certain personal expenses. The majority does not explain why the use of firm funds for personal expenses is probative of Ivanchak, Ivanchak & Fowler not being a partnership. The fact that Theodore had uninhibited access to firm funds is not irrelevant, however. This fact is evidence of co-ownership of firm's assets, an essential element of partnership. R.C. 1775.05(A).

{¶ 40} Finally, the majority states that the failure to file partnership taxes is "some evidence" in support of the probate court's ruling. I disagree. Under federal law, partnerships are not subject to income tax. "Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities." Section 701, Title 26, U.S.Code.[16] Under Ohio law, a partnership is defined as a "pass-through" entity for taxation purposes. R.C. 5733.04(O). As noted above, the undisputed evidence is that Theodore, Terry, and Fowler reported the profits and losses of Ivanchak, Ivanchak & Fowler on their individual tax returns according to their ownership interest in the partnership. This is consistent with the tax treatment of a partner's share of partnership income. Since partnerships do not pay taxes directly, the failure to file partnership taxes is not "some evidence" that Ivanchak, Ivanchak & Fowler was not a partnership.

{¶ 41} Thus, the evidence cited by the majority as supporting the conclusion that Ivanchak, Ivanchak & Fowler is not a partnership does not support that conclusion.[17]

{¶ 42} More than this, it is improper to even consider other evidence when the parties themselves have stipulated to the existence of a partnership and the sharing of profits. See *Heinz v. Steffen* (1996), 112 Ohio App.3d 174, 184, 678 N.E.2d 264 (consideration of the factors listed in R.C. 1775.06(D) "would only be relevant if the existence of a partnership were disputed in the first place").

---

16. Partnerships are required under federal law to file Form 1065, but this form is for informational purposes only.

17. The majority concedes that the trial court erred in its finding that Smaltz and Wern concluded that Ivanchak, Ivanchak & Fowler was not a partnership. The majority understates the error. Although neither Smaltz nor Wern testified before the court, there was a memorandum from Smaltz to Theodore admitted at the hearing in which Smaltz requests an appointment "to discuss the books for the new partnership." Far from concluding that Ivanchak, Ivanchak & Fowler was not a partnership, Smaltz treated the entity as a partnership.

Under the majority's analysis that the lack of writing constitutes "some evidence" of a lack of agreement, virtually every oral agreement in Ohio may be potentially nullified merely for being an oral agreement. The majority's decision is contrary, not only to the facts of this case, but to the law of this state.

{¶ 43} For the foregoing reasons, I would reverse the decision of the lower court.